**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**Willie JAMES, Appellant.**

Superior Court of Pennsylvania.

Submitted March 11, 2013.

Filed May 6, 2013.

Elayne Bryn, Philadelphia, for appellant.

Hugh J. Burns, Jr., Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

BEFORE: STEVENS, P.J., WECHT, J., and COLVILLE, J.*

OPINION BY STEVENS, P.J.

This is an appeal from the judgment of sentence entered by the Court of Common Pleas of Philadelphia County after a jury convicted Appellant Willie James of second-degree murder,[1] robbery,[2] conspiracy,[3] and possessing an instrument of crime (PIC).[4] Appellant claims the trial court violated his rights under the Confrontation Clause pursuant to the U.S. Supreme Court's decision in *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968)[5] when it admitted the redacted confession of his non-testifying

---

* Retired Senior Judge assigned to the Superior Court.

1. 18 Pa.C.S.A. § 2502(b).

2. 18 Pa.C.S.A. § 3701(a)(1).

3. 18 Pa.C.S.A. § 903.

4. 18 Pa.C.S.A. § 907(a).

5. In *Bruton,* the U.S. Supreme Court held that a defendant's rights under the Confrontation Clause are violated when a trial court allows the prosecution to admit his non-testifying co-defendant's statement that implicates him in the relevant crimes even if the trial court instructs the jury that they may only use the statement against the co-defendant. *Bruton,* 391 U.S. at 137, 88 S.Ct. at 1628.

co-defendant which implicated Appellant as a participant in the relevant crimes when linked with other evidence presented at trial. Appellant also claims the prosecutor made an improper remark during her closing argument that negated the redaction. We affirm.

Appellant was charged with the aforementioned offenses in connection with a shooting that occurred on May 31, 2006 on the 1700 block of Mascher Street in Philadelphia. When Philadelphia Police Officer Michele Winkis arrived on the scene, she found a white male lying face up in the street. After Officer Winkis discovered the man did not have a pulse, she called for an ambulance. The victim, who was identified as Robert Mitchell Harris ("the victim"), was transported to Hahnemann University Hospital where he was pronounced dead. The autopsy revealed the victim's cause of death was a fatal gunshot wound to his back as the bullet traveled through the victim's body and punctured his aorta. From the location of the bullet wound and the position of the victim's body, examiners inferred that the victim tried to run away from his attacker and then fell backwards after being shot.

Nearly two years later, Darren Cunningham was arrested on unrelated charges. Cunningham gave several statements to the police indicating that he and two of his friends were involved in the shooting of the victim. Cunningham identified the two men as Randall Singletary and Appellant, who were cousins. Cunningham revealed that he and Appellant approached a man on the street, held him up at gunpoint, and Appellant shot the victim when he tried to run away. Although Cunningham confessed that the men planned to rob the victim, he claimed he did not know Appellant would harm the victim. Immediately after the shooting, Cunningham and Appellant jumped back in their vehicle and told Singletary to drive away. When the men read in the newspaper that the victim had died, they agreed to keep their involvement a secret. However, Cunningham told police that Appellant had bragged about the homicide, asserting he had "put work in." N.T. Trial, 10/5/11, at 146. The Commonwealth offered to allow Cunningham to plead guilty to third-degree murder, robbery, and conspiracy if he cooperated with the prosecution in testifying against Appellant and Singletary.

Appellant and Singletary were subsequently arrested and charged with the victim's murder. The two men proceeded to a joint jury trial, where both Appellant and Singletary chose not to testify. Prior to trial, the trial court ruled that the Commonwealth would be permitted to introduce a statement given by Singletary under the co-conspirator exception to the hearsay rule. However, the trial court required the Commonwealth to redact the statement to remove all references to Appellant to avoid a violation of the Confrontation Clause of the Sixth Amendment of the United States Constitution. All references to Appellant in Singletary's statement were replaced with the phrase, "the other guy." Before the trial began, the trial court instructed the jury that it was required to consider the evidence "separately against each defendant" and provided that they "must exercise caution not to consider against one defendant evidence presented against the other defendant." N.T. Trial, 10/5/11, at 11.

When Cunningham was called to testify on the first day of trial, he attempted to invoke the Fifth Amendment to remain silent. Throughout the Commonwealth's direct examination, Cunningham was uncooperative and denied making any statements about the robbery to the police. However, the Commonwealth admitted

Cunningham's three signed statements as substantive evidence as they constituted prior inconsistent statements under Pennsylvania Rule of Evidence 803. 1.[6] In one of the statements, Cunningham had given police the following information:

> Me, Willie James [ (Appellant) ], and Randall Singletary were riding around looking for some money. We spotted a white oldhead getting out of a car. We rode around the block and we parked up. Me and Willie got out. Willie had the gun and Randall stayed in the car. Willie went ahead of me and walked up to the oldhead and pointed a gun in his face and told him to give that shot up. The oldhead turned to run and Willie shot him one time in the back.

N.T. Trial, 10/5/11, at 113. At the conclusion of Cunningham's testimony, the trial court concluded the trial proceedings for the day.

The next day, Appellant's counsel moved for a mistrial before the jury reconvened in the courtroom. N.T. Trial, 10/6/11, at 5–7. Appellant claimed that, in the context of Cunningham's statement, the jury would be able to infer that Appellant was the "other guy" mentioned in Singletary's statement to police. As Appellant claimed that Cunningham's testimony completely eviscerated the redaction of Singletary's statement, Appellant would be denied the right to confront Singletary, his non-testifying co-defendant. The trial court denied Appellant's motion for a mistrial, but offered to give a curative instruction to the jury. N.T. Trial, 10/6/11, at 7.

Later that day, the Commonwealth presented Singletary's statement to the jury. Singletary's defense was that he was merely present at the scene of the crime, sitting in the car waiting for Appellant and Cunningham when the murder occurred. Singletary denied knowing that Appellant attempted to rob and murder the victim. In the statement, Singletary referred to Cunningham as "Doughboy" and all references to Appellant were replaced with the phrase "the other guy." Singletary's statement included the following language, in relevant part:

> [Singletary:] [The morning of the shooting,] I was riding around in my mother's Durango with another guy and Doughboy. We had been smoking. I was high. We was, like, running low on weed and dutches [sic] and we needed to refill our supplies. I wasn't going to finance it because I was paying for the gas, so it was up to the other guy and Doughboy to get the money or the weed.
>
> We were driving around in the area where the shooting happened and they were going to try and get some weed. As we were spinning around, they said we gonna stop here and get some weed. So me as the driver was like, where? And they was like, just pull over around here. I parked and the other guy and Doughboy exited the vehicle and they walked around the corner. They were around there for a while, and then I heard a gunshot. Then I saw the other guy and Doughboy come running back around the corner.
>
> \* \* \*
>
> I asked them, what the f\* \* \* was that. I get the response like, it was nothing but it went down. That's when I was made aware that there was a ratchet in the car. When I say ratchet, I mean a gun.... They didn't have any weed or any money but they told me to get the f\* \* \* out of here.

6. *See Commonwealth v. Sanders,* 42 A.3d 325, 334 (Pa.Super.2012) (finding witness's written statement identifying the appellant as his assailant was properly admitted as substantive evidence because the witness signed and adopted the writing).

[Question:] What did the other guy and Doughboy tell you about what happened around the corner?

[Singletary:] We never discussed it in detail, but when they said it went down and after hearing the gunshot and the gun being in the car I figured that somebody had got shot or shot at. So naturally I asked them who got hit, but I don't recall what was said. We continued to drive around still looking for some weed and we ended up getting some from North Philadelphia.

N.T. Trial, 10/6/11, at 160–61.

The next day, after the evidentiary portion of the trial was closed, the parties were permitted to make closing arguments to the jury. During one point in the Commonwealth's closing argument, the district attorney misspoke and inadvertently transposed Randall Singletary and Darren Cunningham's names to create the name "Randall Cunningham." As a result, Appellant and the Commonwealth disagreed on which man the district attorney intended to reference in her subsequent statements. N.T. Trial, 10/7/11, at 66. The relevant part of her closing argument is as follows:

[District Attorney:] What does Randall Cunningham say? "He's asked: What did the other guy, "N" or Doughboy—," Darren Cunningham, "—tell you about what happened around the corner?"

"We never discussed it in detail." Does he think you're stupid? You're waiting at a corner for two guys who supposedly earlier in your statement you say you wanted to buy weed, one corroboration; and we didn't have money, corroboration number two; and we were driving around.

"But when they said it went down and after hearing the gunshot—," one, one gunshot, "—and the gun being in the car, I figured that somebody had got shot or shot at. So naturally I asked them who got hit, but I don't recall what was said." Do you honestly believe that, that you're waiting on Cecil B. Moore [Street] *for your cousin and your friend—*

[Counsel for Appellant:] Objection.

[Trial Court:] Overruled.

N.T. Trial, 10/7/11, at 66 (emphasis added).

When the district attorney concluded her closing argument, Appellant's counsel moved for a mistrial, contending that the district attorney committed a *Bruton* violation when she held Singletary's statement and referred to the other two men as Singletary's "cousin and friend." N.T. Trial, 10/7/11, at 79. In response, the district attorney claimed she was actually holding the statement of Darren Cunningham who had repeatedly referred to Singletary and Appellant as cousins. The trial court agreed with the district attorney's recollection of her testimony and denied Appellant's motion for a mistrial.

In its closing instructions, the trial court reiterated that the jury must "consider the evidence separately as to each defendant" and asked them to "render separate verdicts as to each defendant while ... remain[ing] cautious not to consider against one defendant evidence offered against the other defendant." N.T. Trial, 10/11/11, at 9. The trial court also gave a specific charge instructing the jury that Singletary's statement should not be used in any way against Appellant:

There is an important rule that restricts use by you of the evidence offered to show the defendant, Randall Singletary, made a statement concerning the crimes charged in this case. The statement made before trial may be considered as evidence only against the defendant who made that statement. Thus, you may consider the statement

against defendant Singletary if you believe that he made the statement voluntarily. You must not consider the statement as evidence against the defendant Willie James, must not use the statement in any way against the defendant James.

N.T. Trial, 10/11/11, at 9. After the jury began deliberating, the jury requested to have Singletary's statement read back by the court reporter. The trial court granted this request, but first repeated its instruction that the jury must not consider Singletary's statement as evidence against Appellant or use the statement in any way against Appellant. N.T. 10/11/11, at 67.

At the conclusion of the trial, the jury found Appellant guilty of second-degree murder, robbery, conspiracy and PIC. On November 29, 2011, the trial court sentenced Appellant to a mandatory life sentence for the murder conviction. The trial court also imposed sentences of ten to twenty years imprisonment for the robbery conviction, ten to twenty years for the conspiracy conviction, and two and a half to five years imprisonment for PIC. Appellant filed this timely appeal.

 Appellant claims the Commonwealth committed a violation of the Confrontation Clause pursuant to *Bruton* when it introduced the redacted confession of his non-testifying co-defendant Randall Singletary that implicated Appellant in the relevant crimes when viewed in context of other properly admitted evidence.[7] Further, Appellant asserts that the district attorney's commentary in closing argument "corrupted" the redaction of Single-

tary's commentary. As these issues are closely related, we will consider them together.

The Confrontation Clause of the Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted by witnesses against him...." U.S. Const. amend. VI. In *Bruton*, the U.S. Supreme Court held that a defendant "is deprived of his rights under the Confrontation Clause when his nontestifying codefendant's confession naming him as a participant in the crime is introduced at their joint trial, even if the jury is instructed to consider that confession only against the codefendant." *Richardson v. Marsh*, 481 U.S. 200, 201–202, 107 S.Ct. 1702, 1704, 95 L.Ed.2d 176 (1987) (summarizing holding of *Bruton* ). However, in *Commonwealth v. Cannon*, 610 Pa. 494, 22 A.3d 210, 217–18 (2011), our Supreme Court discussed the *Bruton* decision and how its holding has been limited by subsequent federal and state decisions:

> The Confrontation Clause guarantees a criminal defendant the right to cross-examine witnesses. *Richardson* [*v. Marsh* ], 481 U.S. [200], 206, 107 S.Ct. 1702 [95 L.Ed.2d 176 (1987) ]. Ordinarily, a witness whose testimony is introduced at a joint trial is not considered a witness "against" a defendant if the jury is instructed to consider the testimony only against a co-defendant. *Id.* This principle is in accord with the well-established presumption that jurors will abide by their instructions. *Id.; Commonwealth v. Travaglia*, 541 Pa. 108, 661 A.2d 352, 361 (1995). In *Bruton*,

---

7. The Commonwealth contends Appellant waived this issue by failing to make a contemporaneous objection to Cunningham's testimony, which implicated Appellant and Singletary as participants in the crimes. Commonwealth's Brief, at 7–8. Appellant's counsel waited until the next day to move for a mistrial. However, Appellant does not claim that Cunningham should not have been allowed to testify, but challenges the admission of Singletary's redacted confession, which had not yet been admitted into evidence. For this reason, waiver is inappropriate.

however, the United States Supreme Court recognized that "there are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored." *Bruton*, 391 U.S. at 135, 88 S.Ct. 1620. Accordingly, "[t]he *Bruton* Court held that, if a nontestifying co-defendant's confession directly and powerfully implicates the defendant in the crime, then an instruction to the jury to consider the evidence only against the co-defendant is insufficient, essentially as a matter of law, to protect the defendant's confrontation rights." [*Commonwealth v.*] *Brown*, [592 Pa. 376], 925 A.2d [147], 157 [ (2007) ] (citing *Bruton*, 391 U.S. at 135–36, 88 S.Ct. 1620).

The United States Supreme Court examined the *per se Bruton* rule in *Richardson, supra,* and emphasized its narrow scope. Therein, the Court held that the "Confrontation Clause is not violated by the admission of a non-testifying co-defendant's confession with a proper limiting instruction when ... the confession is redacted to eliminate not only the defendant's name, but any reference to his or her existence." *Richardson*, 481 U.S. at 211, 107 S.Ct. 1702. Consistent with the High Court's pronouncement and our own line of cases, we have held that substituting the neutral phrase "the guy" or "the other guy" for the defendant's name is an appropriate redaction. *See Commonwealth v. Travers*, 564 Pa. 362, 768 A.2d 845, 851 (2001). *Cannon*, 610 Pa. at 506–07, 22 A.3d at 217–18.

Given this precedent, Appellant concedes that his co-defendant Singletary's confession was properly redacted to remove any reference to Appellant, but ar-gues he was nonetheless linked to Singletary's confession by the admission of Cunningham's statement which identified Appellant as the shooter and Singletary as the driver of the getaway car. However, Appellant fails to recognize that our courts have distinguished a codefendant's confession that "expressly implicates" the accused from a confession that is not facially incriminating, but becomes inculpatory only when linked with evidence properly introduced at trial. *Richardson*, 481 U.S. at 208, 107 S.Ct. at 1707. The U.S. Supreme Court provided that "[w]here the necessity of such linkage is involved, it is a less valid generalization that the jury will not likely obey the instruction to disregard the evidence." *Id.* at 208, 107 S.Ct. at 1708. Moreover, "while it may not always be simple for the members of a jury to obey the instruction that they disregard an incriminating inference, there does not exist the overwhelming probability of their inability to do so that is the foundation of *Bruton*'s exception to the general rule." *Id.*

Accordingly, in *Richardson*, the U.S. Supreme Court declined to extend its holding in *Bruton* to a co-defendant's confession that was redacted to omit any reference to the defendant, but could be linked to the defendant by inferential incrimination. *Id.* at 211, 107 S.Ct. at 1709. Likewise, our state Supreme Court has upheld this distinction as it emphasized there is no *Bruton* violation when the accused is linked to the crime with other properly admitted evidence other than the redacted confession; it is "a permissible instance of contextual implication." *Cannon*, 610 Pa. at 509, 22 A.3d at 219.

In the same manner, we find the Confrontation Clause was not violated by the admission of Singletary's redacted confession in this case. The confession was properly redacted pursuant to our Su-

preme Court's decision in *Travers;* all references to Appellant were replaced with the neutral phrase "the other guy." *Travers,* 564 Pa. at 373, 768 A.2d at 851. As a result, the redacted confession was not facially incriminating, but inculpated Appellant only when considered with other properly admitted evidence at trial, namely, Cunningham's prior statements that were admitted as substantive evidence at trial. The trial court gave unequivocal cautionary instructions to the jury providing that they were prohibited from considering Singletary's statement against Appellant in any way. Since Singletary's statement was not powerfully incriminating on its face, the limited rule set forth in *Bruton* does not apply and the "almost invariable assumption of the law that jurors follow their instructions" controls in this case. *Id.* As a result, we conclude that the redaction of Singletary's confession and the accompanying cautionary instructions to the jury sufficiently protected Appellant's rights under the Confrontation Clause.

Our Supreme Court has also addressed the issue of whether the proper redaction of a non-testifying co-defendant's confession can be negated by the commentary of the prosecutor. In *Brown, supra,* our Supreme Court acknowledged that a prosecutor's commentary improperly referencing *Bruton*—redacted evidence during opening or closing statement could possibly be so prejudicial as to warrant a new trial:

> There is no point in redacting and sanitizing otherwise inculpatory statements of a non-testifying co-defendant, to facilitate a joint trial, if that protective measure approved by the High Court to comport with the Confrontation Clause could be deliberately and directly undone by lawyer commentary. Consider, for example, if the redacted evidence would be powerfully incriminating if tied to the defendant, and the prosecutor

> were to say something along the lines of: "You heard the co-defendant's confession, which also described the actions of someone he identified only as 'the other guy;' well, I'm here to tell you that 'the other guy' he was speaking of was the defendant and we just changed the wording of the statement." ... We have no doubt that, in an appropriate case, the High Court would approve application of the *per se Bruton* rule to an instance where the objection is to argument by counsel concerning *Bruton*—redacted evidence.

*Brown,* 592 Pa. at 398, 925 A.2d at 159–60.

The facts of *Brown* are nearly identical to the facts in this case. Brown and his two friends, Garcia and Cheatem, were driving around Philadelphia and smoking marijuana. After the men pulled over at a gas station, Brown and Garcia robbed and murdered a female victim while Cheatem waited in the backseat of their car. Brown and Garcia were subsequently arrested and tried together before a jury. Cheatem testified for the prosecution against Brown and Garcia. In addition, Garcia gave a statement in which he told police that Brown attempted to rob the victim and when she resisted, Brown shot her. The statement was redacted to replace all references to Brown and Cheatem with the phrase "the other guys." However, during closing argument, the prosecutor referenced Garcia's redacted confession and mistakenly referred to Brown by his alias instead of referring to him as the "other guy." *Brown,* 592 Pa. at 385–86, 925 A.2d at 152.

Although the Supreme Court held in *Brown* that "a *Bruton* violation may arise when a prosecutor discloses to the jury that the co-defendant's statement has been redacted and unequivocally identifies the defendant as the individual whose name

was removed," the Supreme Court found the *per se* rule in *Bruton* did not apply to the prosecutor's improper reference in *Brown,* given the context and circumstances of the misstatement. *Cannon,* 610 Pa. 494, 22 A.3d at 219 (summarizing its holding in *Brown* ); *Brown,* 592 Pa. at 399, 925 A.2d at 160. The Supreme Court provided its rationale as follows:

> Here, we do not condone the prosecutor's misstatement (and neither did the trial judge, as he offered a curative charge) and we stress the special obligation upon the prosecution when trying defendants jointly in a circumstance where *Bruton* redaction is implicated. Nevertheless, we conclude that the circumstances were not so egregious that *Bruton's per se* rule is implicated, so as to displace the traditional, discretionary role of the trial court in fashioning an appropriate response. The prosecutor's statement, though plainly improper, affected the redaction only indirectly and by inference. Moreover, the error occurred in the context of an argument attempting to rebut codefendant Garcia's claim of non-involvement. The revelation of appellee's name when speaking of the stop at Garcia's house, though troublesome, concerned a point in time after the actual killing, and it did not directly inculpate appellee in the murder beyond the evidence properly introduced through Cheatem concerning appellee's role in the murder. Moreover, the reference was isolated and, following the objection, the prosecutor made no further improper reference to the redacted statement. In light of the context and circumstances of the misstatement ... we hold that *Bruton's per se* rule does not apply.

*Brown,* 592 Pa. at 398–99, 925 A.2d at 160. Accordingly, the Supreme Court concluded that Brown's confrontation rights were not violated in light of the proper redaction of

Brown's co-defendant's confession and the "direct, unequivocal, and strong" curative instruction the trial court gave to the jury that the confession could not be used in any way against Brown. *Id.* at 400, 925 A.2d at 161.

Subsequent to its decision in *Brown,* the Supreme Court granted review in *Cannon* to determine whether this Court erred in concluding that a prosecutor's commentary in opening statement violated the *Bruton* rule. In *Cannon,* the prosecutor referred to the redacted confession of Khalif Alston, Cannon's co-defendant, and then told the jury that "the evidence will show through other sources, ladies and gentleman, the person who was with Mr. Alston, was [the appellee]." *Cannon,* 610 Pa. at 508, 22 A.3d at 215. The prosecutor then pointed to the corroborated testimony of Dominique Everitt, who had testified that Cannon was present at the scene of the crime at the time of the murder, connected him with the murder weapon, and claimed she overheard Cannon and Alston fighting about the shooting.

In extending *Bruton* to the facts of *Cannon,* the panel of this Court concluded that the prosecutor's reference was more egregious than that of the prosecution in *Brown* because the prosecutor read Alston's redacted statement and then immediately thereafter identified Cannon as a participant in the crime. *Commonwealth v. Cannon,* 1373 EDA 2007, 974 A.2d 1177 (Pa.Super. filed April 23, 2009) (unpublished memorandum). In addition, the panel found significant the fact that the prosecutor had made this remark in opening statements before any evidence had been presented. Moreover, this Court found the prosecutor's remark incriminated Cannon beyond the properly introduced evidence. As a result, the panel found the prosecutor's remark was a violation of *Bruton* that resulted in prejudice to Can-

non that could not be cured with a cautionary instruction.

However, the Supreme Court reversed this Court's decision in *Cannon* as it concluded that the prosecutor's commentary was not so egregious to trigger the *Bruton* rule as set forth in *Brown*. *Cannon*, 610 Pa. at 508–09, 22 A.3d at 219. The Supreme Court set forth its reasoning as follows:

Initially, we observe that when making the "objectionable" comment, the prosecutor did not use the precise language of the redaction. After reading Alston's redacted confession to the jury, the prosecutor stated, "The evidence will show through other sources, ladies and gentleman, the person who was with Mr. Alston was [Appellee]." Thus, the prosecutor referenced "the person who was with" Alston, not "the other guy." While a seemingly trivial difference, the lack of symmetry in the language attenuates the link between the comment and the redacted statement. It further distinguishes the instant case from *Brown*, where our hypothetical had the prosecutor mimicking the exact language of the redaction.

Moreover, the prosecutor did not directly inculpate Appellee with Alston's statement. Significantly, the prosecutor stated that evidence from "other sources" would indicate that Appellee was the man who conspired with Alston. The prosecutor unequivocally told the jury that the confession could be used only against Alston, presented the evidence against Alston, and then transitioned to the admissible evidence against Appellee. Thus, the identification of Appellee was inculpatory by reference to evidence other than the redacted confession. Linking Appellee to the crime with other properly admitted evidence is not a violation of the *Bruton* rule; it is a permissible instance of contextual implication. *Richardson, supra* at 208–09, 107 S.Ct. 1702 (recognizing the distinction between codefendant confessions that expressly incriminate and those that become incriminating when linked with properly introduced evidence). Since the prosecutor did not use Alston's statement to establish Appellee's guilt, he did not negate the redaction.

We emphasize the significance of the fact that the prosecutor, consistent with his proffer, identified the evidence from "other sources" that established Appellee's guilt. Immediately after making the comment, the prosecutor queried, "How do we know? We know from Dominique." N.T., 1/22/07, at 37. The prosecutor proceeded to explain that Dominique's statement placed Appellee at the scene and linked him to the gun, which ballistics evidence identified as the murder weapon. Furthermore, Dominique indicated that she overheard Appellee and Alston quarrelling about the shooting, a fact corroborated by Jamilla's statement. The prosecution presented the aforementioned evidence at trial, ultimately proving that Appellee was the shooter. Notably, the Superior Court recognized this fact, twice acknowledging that the evidence—absent the redacted confession—was sufficient to sustain the verdict. *Cannon, supra* at 3–4, 12.

The Superior Court failed to appreciate the distinction between the prosecutor's comments in this case and the hypothetical posed in *Brown*. In our example in *Brown*, the prosecutor blatantly disclosed to the jury that the statement had been redacted and that the individual whose name had been removed was the defendant. By contrast, the prosecutor in the instant case referenced the other evidence detailing Appellee's involvement in the crime. His comment merely introduced the admissible evi-

dence that the prosecution would present during its case-in-chief. Thus, the prosecutor's remark was not the type of direct inculpation that *Brown* held could constitute a *Bruton* violation.

\* \* \*

[O]ur review of the record indicates that the trial court gave "direct, unequivocal, and strong" cautionary instructions, repeatedly detailing the proper manner of weighing the evidence. *Brown, supra* at 161. The trial court, which is in the best position to assess whether any prejudice can be cured, determined that the prosecutor's comment did not justify a mistrial. *Id.* In reaching a contrary result, the Superior Court failed to accord proper deference to the trial court, thereby disregarding our pronouncement in *Brown*.

*Id.* at 508–11, 22 A.3d at 219–20. Accordingly, the Supreme Court concluded that Cannon's confrontation rights were not violated by the admission of his co-defendant's redacted confession when the trial court gave multiple, accurate cautionary instructions. Further, the Supreme Court provided that its proposed expansion of the *Bruton* rule set forth in *Brown* did not apply to this case, as the prosecutor's comment did not negate the redaction.

■ In the same manner, the prosecutor's statement in this case was not so egregious to warrant the extension of the *Bruton* rule to this case. We initially note that at trial, there was confusion on whether the prosecutor was referencing the statement of Darren Cunningham or Randall Singletary, Appellant's co-defendant, when the misstatement occurred. After reviewing both statements, it is clear that the prosecutor intended to reference Singletary's statement, but inadvertently stated his name as "Randall Cunningham." The prosecutor went on to question Singletary's claim that he could not recall any

details of his conversation with Cunningham and the "other guy" after gunshots were fired and the two men ran around the corner and jumped in the vehicle where Singletary was waiting. As the prosecutor discounted Singletary's version of the events, the prosecutor mistakenly referred to the two men as Singletary's "cousin and friend."

Given the context and circumstances of the misstatement, we find *Bruton* should not be extended to the prosecutor's improper remark in this case. As the prosecutor's reference to the redacted statement became jumbled when she transposed the last names of Cunningham and Singletary, the trial court's own recollection of the prosecutor's comment was that he was referring to statement of Darren Cunningham, who had addressed both men as cousins in his statements to police. The obvious confusion that resulted made the prosecutor's remark difficult to understand and obfuscated his reference to Appellant as Singletary's cousin.

Regardless of the obscurity of the prosecutor's misstatement, the reference to Appellant as Singletary's cousin did not directly link Appellant to Singletary's redacted confession as it required inferential incrimination. The identification of Appellant was only inculpatory when viewed in the context of evidence other than the redacted confession. As noted above, linking Appellant to the crime with other properly admitted evidence does not violate *Bruton*, but is a "permissible instance of contextual implication." *Cannon*, 610 Pa. at 509, 22 A.3d at 219. Further, the prosecutor made the error in the context of an argument attempting to discount co-defendant Singletary's claim of non-involvement, not for the purpose of establishing Appellant's guilt. After Appellant's counsel objected to the prosecutor's

isolated remark, the prosecutor was careful to use the redacted phrase "the other guy" when discussing Singletary's confession.

The prosecutor's statement in this case can be distinguished from the Supreme Court's hypothetical situation in *Brown* in which it suggested that prosecutor commentary may violate the rule in *Bruton*. *See Brown*, 592 Pa. at 398, 925 A.2d at 159–60. The prosecutor neither informed the jury that Singletary's statement had been redacted nor unequivocally identified Appellant as the individual whose name was removed. The prosecutor did not mimic the language of the redaction and inform the jury that Appellant was "the other guy" that Singletary referenced in his confession. The reference to Appellant as Singletary's cousin did not directly inculpate Appellant in the murder beyond the evidence already introduced through Cunningham, who had given several statements in which he identified Appellant as the shooter and repeatedly referred to Appellant as Singletary's cousin. We conclude that the circumstances of the prosecutor's misstatement were not so egregious that *Bruton's per se* rule was implicated. The prosecutor's remark did not negate the appropriate redaction of Singletary's statement.

Moreover, the trial court issued multiple cautionary instructions that sufficed to remove any prejudice that resulted. The trial court repeatedly instructed the jury that it was required to consider the evidence "separately against each defendant" and that they "must exercise caution not to consider against one defendant evidence presented against the other defendant." N.T. Trial, 10/5/11, at 11; 10/11/11, at 51, 59. The trial court gave direct, strong, and unequivocal instructions that the jury could not consider Singletary's confession against Appellant or use the statement in any way against Appellant. N.T. Trial, 10/11/11, at 9, 67.

In light of the redaction of Singletary's statement and the trial court's repeated cautionary instructions, we conclude that Appellant's rights under the Confrontation Clause were not violated by the admission of Singletary's statement at their joint trial. Further, the prosecutor's misstatement did not negate the redaction such that the jury could not follow the trial court's instruction to refrain from using Singletary's statement against Appellant. Accordingly, we find the trial court did not err in denying Appellant's motion for a mistrial and affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.