J-S45033-17

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| v. | : | |
| | : | |
| FAHEEM DAVIS, | : | |
| | : | |
| Appellant | : | No. 143 EDA 2016 |

Appeal from the Judgment of Sentence July 31, 2015,
in the Court of Common Pleas of Philadelphia County,
Criminal Division, at No: CP-51-CR-0004776-2013

BEFORE:    GANTMAN, P.J., PANELLA, and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.:          **FILED SEPTEMBER 13, 2017**

Faheem Davis (Appellant) appeals from the judgment of sentence imposed following his convictions for second-degree murder, robbery, conspiracy, carrying firearms on public streets or public property in Philadelphia, and possession of an instrument of a crime.  We affirm.

The trial court summarized the evidence as follows.

> On September 11, 2011, Christopher Lee ("Lee") was playing dice with Dontay Chestnut ("Chestnut") and Kenneth Perry ("Perry") on the sidewalk on the corner of Lindenwood Street and Jefferson Street.  Later that night, at approximately 7:30 p.m., Appellant [] and Curtis Kingwood ("Kingwood") approached the men playing dice, where money was visibly out on the ground.  [Appellant] took out a gun and said "You know what time it is," which the men understood to mean that they were going to be robbed. A struggle ensued between Lee and [Appellant] during which [Appellant] fired a single shot.  Lee sustained one gunshot to the chest and was pronounced dead at the University of Pennsylvania Hospital at approximately 8:10 p.m.

---

*Retired Senior Judge assigned to the Superior Court.

[The case remained open until August 6, 2012, when] police were notified of a ballistics match between a gun recovered from a domestic assault and the ballistics evidence recovered in the September 11, 2011 shooting. After further investigation, detectives created photo arrays which were shown to both Chestnut and Perry, wherein Chestnut and Perry each identified [Appellant] as the shooter and co-defendant Kingwood as the other man who was with him. The police obtained arrest warrants and co-defendants Appellant and Kingwood were arrested in February 2013.

Trial Court Opinion (TCO), 7/8/2016, at 3-8 (footnote omitted).

On January 8, 2014, [Appellant] filed a motion to sever to which the Commonwealth filed its opposition on June 5, 2014. On June 5, 2014, [the trial] court heard and denied [co-defendant] Kingwood's motion to suppress a statement and accepted the parties' written submissions on [Appellant's] motion to sever and held the matter under advisement. On July 1, 2014, [the trial court] denied [Appellant's] motion to sever.

On July 28, 2014, [Appellant] elected to exercise his right to a jury trial and pled not guilty[.] On August 4, 2014 the jury found [Appellant] guilty of [the aforementioned crimes] and sentencing was deferred for the completion of a pre–sentence investigation report and a mental health evaluation and continued several times due to the [trial court's] new civil calendar and counsel availability. On July 31, 2015, [the trial] court sentenced [Appellant] to the mandatory term of life imprisonment on the murder charge. He received no further penalty on the remaining charges. On August 10, 2015, [Appellant] filed a post-sentence motion, which [the trial court] denied on December 4, 2015.

On December 29, 2015, [the trial court] received a notice of appeal and on January 7, 2016, [Appellant] was served an order directing him to file a concise statement of the matters complained of on appeal pursuant to Pa.R.A.P. 1925(b). On January 26, 2016, [the trial court] received [Appellant's] 1925(b) response[.]

*Id.* at 1-2 (unnecessary capitalization omitted).

Appellant states the following issues for this Court's consideration:

I.     Is [Appellant] entitled to a new trial where the verdict, on all charges, is against the weight of the evidence as the greater weight of the evidence did not establish that [Appellant] was a principal, conspirator[,] or an accomplice to the crimes charged?

II.    Is [Appellant] entitled to a new trial where the prosecutor engaged in misconduct during closing arguments and said "rather than work and make an honest living I'd rather rob people" and attributed the same to [Appellant]?

III.   Is [Appellant] entitled to a new trial where the [trial court] erred when it failed to grant a severance and the result of same was [Appellant] being identified as a perpetrator through the reading of co-defendant's statement which could not be properly redacted?

IV.   Is [Appellant] entitled to a new trial as the result of [the trial court error,] where the [the trial court] permitted evidence to establish that [Appellant] had prior contact with the police and where that contact was remote in time to the homicide and where the interaction with the police would have tarnished [Appellant's] good name, image[,] and character?

Appellant's Brief at 3 (trial court answers omitted).

We begin our review of Appellant's weight-of-the-evidence argument by setting forth our standard of review.

> The decision of whether to grant a new trial on the basis of a challenge to the weight of the evidence is necessarily committed to the sound discretion of the trial court due to the court's observation of the witnesses and the evidence. A trial court should award a new trial on this ground only when the verdict is so contrary to the evidence as to shock one's sense of justice. … Our review on appeal is limited to determining whether the trial court abused its discretion in denying the motion for a new trial on this ground.

*Commonwealth v. Chamberlain,* 30 A.3d 381, 396 (Pa. 2011) (citations omitted). "Not merely an error in judgment, an abuse of discretion occurs

when the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence on record." ***Commonwealth v. Handfield***, 34 A.3d 187, 208 (Pa. Super. 2011) (quoting ***Commonwealth v. Cain***, 29 A.3d 3, 6 (Pa. Super. 2011)).

In support of his claim, Appellant avers that

> [t]he weight of the evidence was truly contrary to the verdict. This case was an identification case. The two eyewitnesses made photo identifications more than a year after the homicide. Moreover, the witnesses and [Appellant] did not know one another. There is no testimony which would have indicated that the witnesses had ever, even, seen [Appellant] prior to the day in question. The identifications made were extremely weak and did not match the description of [Appellant initially given to the police] in terms of weight, height and complexion.

Appellant's Brief at 9-10.

It its 1925(a) opinion, the trial court offered the following analysis.

> On appeal, [Appellant] asserts that the verdict was against the weight of the evidence, based upon the nature and substance of the eyewitness identifications. [The trial court] disagrees. At trial, the jury heard testimony from Linda Smith Lee, [Chestnut, Perry,] Samuel Hutson, Theodore Coles, numerous police officers and detectives, as well as the medical examiner, Dr. Collins, and was able to assess each of their credibility as a witness. Eyewitnesses Chestnut and Perry both gave statements to police describing the shooter and they were later able to identify [Appellant] through photos shown to them by police as well as make in-court identifications at trial. Their testimony further indicated that, at the time of the shooting, [Appellant] was only a couple of feet away from them and they had a clear view of his face. While [Appellant] challenges the accuracy of the identifications based upon the gap in time between the shooting and the generation of the photo arrays, the jury clearly found that the delay was sufficiently explained

- 4 -

via the testimony of the officers and detectives involved in the investigation. The collective testimony of Detective Jenkins, Detective Golphin, Officer Hilbert, and Officer Stott detailed the development of the ongoing investigation which was jumpstarted by a ballistics match nearly one year after the shooting. Following the match, the police conducted a series of interviews, including Samuel Hutson, Teddy Coles, and [co-defendant] Kingwood, which provided them with sufficient information to generate photo arrays to present to the eyewitnesses. In consideration of the initially sparse descriptions of [Appellant] and co-defendant Kingwood given by eyewitnesses at the scene and the subsequent lull in the investigation, [the trial court] provided the jury with a comprehensive instruction on assessing the eyewitness testimony and permitted the jury, as the fact finder, to determine whether such testimony should be received with caution. Th[e trial court's] charge to the jury enumerated many detailed factors to be considered when assessing eyewitness testimony, thus providing the jury with a means of critical assessment. The jury verdict, reflecting the assessment of all of the identification evidence presented at trial, was not so contrary to the evidence presented at trial as to "shock one's sense of justice." Therefore, [the trial] court finds no merit in [Appellant's] challenge to the weight of the evidence presented at trial.

TCO, 7/8/2016, at 14-15 (footnotes omitted).

We discern no abuse of discretion in the trial court's conclusion. As the trial court correctly observed, it is within the province of the jury, sitting as fact-finder, to review the evidence and assess the credibility of the testifying witnesses. *See Commonwealth v. Williams*, 854 A.2d 440, 445 (Pa. 2004) ("In criminal proceedings, the credibility of witnesses and weight of evidence are determinations that lie solely with the trier of fact."). *See also Commonwealth v. DeJesus,* 860 A.2d 102, 107 (Pa.2004) ("The weight of the evidence is exclusively for the finder of fact, which is free to

believe all, part, or none of the evidence, and to assess the credibility of the witnesses."). Accordingly, Appellant's weight challenge fails.

Next, we consider Appellant's claims related to the alleged prosecutorial misconduct during opening statements,[1] and the trial court's error in failing to grant a mistrial. In so doing, we note the following standard which governs our review of such claims:

> In criminal trials, declaration of a mistrial serves to eliminate the negative effect wrought upon a defendant when prejudicial elements are injected into the case or otherwise discovered at trial. By nullifying the tainted process of the former trial and allowing a new trial to convene, declaration of a mistrial serves not only the defendant's interest but, equally important, the public's interest in fair trials designed to end in just judgments. Accordingly, the trial court is vested with discretion to grant a mistrial whenever the alleged prejudicial event may reasonably be said to deprive the defendant of a fair and impartial trial. In making its determination, the court must discern whether misconduct or prejudicial error actually occurred, and if so, … assess the degree of any resulting prejudice. Our review of the resulting order is constrained to determining whether the court abused its discretion. Judicial discretion requires action in conformity with [the] law on facts and circumstances before the trial court after hearing and consideration. Consequently, the

---

[1] Specifically, Appellant takes issue with the following: "The prosecutor engaged in prosecutorial misconduct by stating in her closing argument that [Appellant] 'rather [than] work and make [an] honesty living[,] I'd rather rob people.' NT July 28 at p.32." Appellant's 1925(b) Statement, 1/26/2016; Appellant's Brief at 12. However, our review of the record reveals this statement occurred during the Commonwealth's opening, not closing. Although Appellant, on appeal, now argues that a second statement, during the Commonwealth's closing also constituted misconduct, we find the latter claim waived for failure to preserve it in his concise statement. *See* Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

court abuses its discretion if, in resolving the issue for decision, it misapplies the law or exercises its discretion in a manner lacking reason.

The remedy of a mistrial is an extreme remedy required only when an incident is of such a nature that its unavoidable effect is to deprive the appellant of a fair and impartial tribunal.

*Commonwealth v. Judy*, 978 A.2d 1015, 1019 (Pa. Super. 2009) (internal quotation marks and citation omitted). An opening statement is not evidence. *Commonwealth v. Parker*, 919 A.2d 943 (Pa. 2007). "The prosecution, as well as the defense, is afforded reasonable latitude in presenting opening arguments to the jury." *Id.* at 950. "A prosecutor's statements must be based on evidence that he plans to introduce at trial, and must not include mere assertions designed to inflame the jury's emotions." (citation omitted).

Appellant's issue revolves around the following statement made by the Commonwealth:

Ladies and gentlemen, these defendants, rather than work and make an honest living, armed themselves with a gun and went around looking for targets to take from other people and take from other people with a loaded gun at whatever the cost. And, in this case, it cost 22-year-old [Lee] his life.

N.T., 7/28/2014, at 32-33. On appeal, Appellant avers this statement referenced Appellant's lack of employment, which, in light of case law cited by Appellant, the Commonwealth is prohibited from doing "unless there is some very specific reason[], that is evidentiary, for doing so." Appellant's Brief at 13. Appellant contends that there was no reason for the prosecutor

to make such comments "but for the fact that the [p]rosecutor was attempting to raise passion and emotion[,]" and that because the statement tainted "the fairness of the deliberations of the jury[,]" the trial court erred by failing to grant Appellant a mistrial. *Id.* at 14.

With respect to its decision to deny Appellant's motion, the trial court set forth the following.

> Upon review of the evidence presented at trial, [the trial] court has determined that the prosecutor's remarks did not constitute misconduct. The remarks were within the permissible limits of oratorical flair afforded to counsel in apprising the jury of how the facts of the case will develop through the evidence presented at trial. The remarks referenced the evidence to be presented at trial through the testimony of eyewitnesses [Chestnut and Perry,] as well as the police testimony, indicating that upon being approached by [Appellant, Appellant] took out a gun and said "You know what time it is," which Chestnut and Perry understood to mean that they were going to be robbed. Th[e trial] court further found that the remarks were not a deliberate attempt to destroy the jury's objectivity and preclude the jury from rendering a true verdict.

TCO, 7/8/2016, at 10-11 (footnote omitted).

We note at the outset that Appellant has failed to develop any meaningful argument regarding the prejudice he proclaims to have suffered, and instead only asserts baldly that the prosecutor's comments were made to "taint the fairness of deliberations" which "could not be undone by any [jury] instruction[.]" Appellant's Brief at 14.

In light of our standard of review, we are unable to find that the trial court abused its discretion in denying Appellant's request for a mistrial. *See*

*Commonwealth v. Laird*, 988 A.3d 618, 638 (Pa. 2010) ("A mistrial is an 'extreme remedy' that is only required where the challenged event deprived the accused of a fair and impartial trial."). In finding as such, we agree with the trial court that the prosecutor's statement concerning Appellant's not making a "honest living" in conjunction with setting up the facts to be presented, namely that Appellant and his co-defendant committed a robbery that resulted in Lee's death, constituted permissible oratorical flair. *See Commonwealth v. Holley*, 945 A.2d 241, 250 (Pa. Super. 2008) ("[P]rosecutorial misconduct does not take place unless the unavoidable effect of the comments at issue was to prejudice the jurors by forming in their minds a fixed bias and hostility toward the defendant, thus impeding their ability to weigh the evidence objectively and render a true verdict.") (quotation marks and citation omitted). Appellant has failed to convince us otherwise.[2]

---

[2] We note that *Commonwealth v. Barkelbaugh* and *Commonwealth v. Chambers*, cited by Appellant in support of his contention that the prosecutor engaged in misconduct are easily distinguishable. Unlike in this case, where the prosecutor remarked that instead of making an "honest living" Appellant and his co-defendant engaged in robberies, in *Barkelbaugh*, our Supreme Court found that trial counsel was ineffective for failing to object to a prosecutor's closing remarks, wherein the prosecutor stated that the defendant's **motive** to commit the robbery was that he was unemployed. In *Chambers* the only claim of prosecutorial misconduct raised was found to be waived because counsel failed to raise the issue during trial or on direct appeal. Thus, these cases provide no support to Appellant.

Additionally, it is worthy to note that following opening remarks, the trial court had the statement in question read back from the court reporter and ultimately concluded that it did not "believe that [the statement] rises to the level of [a] mistrial[.]" N.T., 7/28/2014, at 64. The trial court was willing to provide a cautionary instruction to the jury, but stated that it was the court's belief that such an instruction "might highlight something." *Id.* Trial counsel did not request any instruction be given.

In his third issue, Appellant argues the trial court erred in denying his motion for severance of his trial from that of his co-defendant. Appellant's Brief at 14.

> Criminal defendants may be joined where they allegedly participated in the same act or transaction. Pa.R.Crim.P. 1127(A)(2). Where conspiracy is charged, co-defendants should be tried together. Further, "it is well established that a motion for severance is addressed to the sound discretion of the trial court, and that its decision will not be disturbed absent a manifest abuse of discretion." *Commonwealth v. Jones*, [610 A.2d 931, 936 (Pa. 1992)]. In determining whether to sever certain defendants, the court must balance the need to minimize the prejudice that may be caused by consolidation against the general policy of encouraging judicial economy. A better chance of acquittal from a separate trial is not sufficient cause to warrant severance. Rather, the defenses presented by the various defendants must be "irreconcilable and exclusive" and "conflict at the core" before the substantial prejudice burden is met. *Commonwealth v. Bennie*, 508 A.2d 1211, 1215 (Pa. Super. 1986).

*Commonwealth v. Presbury*, 665 A.2d 825, 827–28 (Pa. Super. 1995) (some citations omitted).

Here, Appellant's co-defendant, Kingwood, provided a statement to police admitting to his participation in the robbery that led to Lee's murder. Appellant's Brief at 15-16. He also implicated another individual as the shooter. *Id.* This statement, which was redacted, was admitted at their joint trial. Appellant contends that the mention of another person would logically point to Appellant as the "other guy," who was the shooter. *Id.* at 16. Because of this, Appellant avers he was denied a fair trial.

The trial court offered the following in support of denying Appellant's motion to sever.

> In the instant matter, [Appellant] avers that this court abused its discretion in denying his request for severance, claiming that he was highly prejudiced by the presentation of co-defendant Kingwood's redacted statement to the jury. Th[e trial] court disagrees. In ***Bruton v. United States***, [391 U.S. 123 (1968)] the United States Supreme Court held that a defendant is deprived of his rights under the Confrontation Clause of the Sixth Amendment when his non-testifying co-defendant's confession naming him as a participant in the crime is introduced at their joint trial. The Court reasoned that the possibility of prejudice arising from the introduction of such a confession by a non-testifying co-defendant is so great that a new trial is required even where the court specifically instructs the jury that the co-defendant's confession must be considered as evidence only against that co-defendant[]. The Court further clarified, in ***Gray v. Maryland***, [523 U.S. 185 (1998)] that
>
>> [r]edactions that simply replace a name with an obvious blank space or a word such as "deleted" or a symbol or other similarly obvious indications of alteration, however, leave statements that, considered as a class, so closely resemble Bruton's unredacted statements that, in our view, the law must require the same result.

- 11 -

In interpreting ***Bruton*** and its progeny, [] Pennsylvania [C]ourts have proposed appropriate ways in which to redact a non-testifying co-defendant's statement, such as by replacing the defendant's name with "the other man." Moreover, our [C]ourts have reasoned that "there is no ***Bruton*** violation when the accused is linked to the crime with other properly admitted evidence other than the redacted confession; it is 'a permissible instance of contextual implication.'" [***Commonwealth v. James***, 66 A.3d 771, 777 (Pa. Super. 2013) (citing ***Commonwealth v. Cannon***, 22 A.3d 210, 219 (Pa. 2011).]

The instant statement at issue by co-defendant Kingwood was presented to the jury through the testimony of Detective Jenkins. The detective read in the statement, in relevant portion, as follows:

Question: [Kingwood], can you tell us what information you have concerning the shooting death of Christopher Lee?

Answer: I was chilling on the block on Camac Street like I always do with my friend when the third guy pulls up in a blue Jeep and asked me and the second guy to roll out. So me and the second guy got in the Jeep. I got in the backseat and the second guy got in the front with the third guy. At first, we were going to go holler at some girls, then the second guy started talking about going out West Philly to get some bread. The second guy asked me if I was down, and I said, yeah, I'm down for whatever. We get out West Philly and we see about five or six dudes gambling off the corner so we speed around the block. The second guy and I get out of the car to go do the sting. We walk up the street and the second guy pulls out and says, 'You know what it is,' and everyone starts to run off. I see the second guy shoot at the dude like one and two times. I run back towards the car with the second guy following me. We take off and head back to North. We go to McDonalds at Broad and Allegheny. I'm like 'What the fuck?' I knew we was going to go do a sting to get some bread. I did not know anyone was going to get popped. Once we got back to the block, the

- 12 -

second guy gave me the gun and told me to hold on to it because it was hot. I took and put the gun in a bag and stashed it in the alleyway on the block.

Question: [Kingwood], what is a 'sting'?

Answer: A robbery.

Question: Why did you go out to West Philly?

Answer: We were driving and talking, then we started talking about getting some bread, so we went out West Philly.

Question: [Kingwood], what do you mean by 'bread'?

Answer: Money.

Question: [Kingwood], did you or anyone else get any proceeds from the robbery?

Answer: No, I did not.

Question: [Kingwood], can you tell us what made you guys pick or want to rob these particular guys?

Answer: They were corner boys and we saw them counting money.
[]
Question: [Kingwood], who had the gun?

Answer: The second guy had the gun.

Question: [Kingwood], did you know that the second guy had a gun?

Answer: Yeah.

[...]

Question: [Kingwood], what kind of gun did the second guy have with him during this incident?

Answer: It was a .22 or .25 automatic.

Question: What color was the gun?

Answer: It was like a silverish color.

Question: How did you know someone got popped?

Answer: I saw one of the dudes fall on the ground.

Question: [Kingwood], did you know the person that got shot died?

Answer: No.

Question: [Kingwood], can you tell us what you were wearing the day of the incident?

Answer: I don't remember.
[]
Question: [Kingwood], after you stashed the gun in the alleyway, do you know what happened to it afterwards?

Answer: No.

Question: [Kingwood], when was the last time that you saw or spoke with the second guy?

Answer: It's been a minute.

The Commonwealth's redactions to the statement included replacing [Appellant] and another individual with neutral terms, eliminating the portion of the statement wherein Kingwood refers to [Appellant] as hanging out on Camac Street, and eliminating the portion of the statement wherein Kingwood explains that he had not spoken with [Appellant] in some time because "he booked on a home invasion." As such, the introduction of the statement itself did not prejudice [Appellant] and any contextual implication that [Appellant] was linked to the crime, rendered through other evidence admitted at trial, was permissible.

TCO, 7/8/2016, at 5-8 (footnotes omitted).

The trial court's reasoning is supported by the record and the relevant case law. Appellant's argument that his trial should have been severed from his co-defendant revolves solely around Kingwood's conversation with police and its potential to implicate Appellant in the charged crimes. However, in light of our case law, as cited *supra*, a redacted statement, coupled with a limiting instruction,[3] is allowed to be presented in a joint trial, and any potential implications from that statement that linked Appellant to the crime based upon the other evidence presented, including the identification by two eyewitnesses, was permitted.[4] ***See James***, 66 A.3d at 777 ("Appellant fails to recognize that our courts have distinguished a co[-]defendant's confession that 'expressly implicates' the accused from a confession that is not facially incriminating, but becomes inculpatory only when linked with evidence

---

[3] ***See*** N.T., 8/1/2014, at 169-170.

> Now, a statement made before trial may be considered as evidence only against the defendant who made the statement. Thus, you may consider the statement of Mr. Kingwood as evidence against [Mr. Kingwood], again, if you believe he made the statement voluntarily. And you have to engage in what I told you about that. You must not consider the statement, however, as evidence against [Appellant]. You must not use the statement in anyway against [Appellant].

[4] Furthermore, we agree with the Commonwealth that Appellant failed to show that "his and co-defendant's defenses were incompatible. Indeed, such a showing would be impossible, as both defendants relied on a theory of misidentification. A joint trial was also advisable because both defendants were charged with criminal conspiracy, and their crimes arose out of the same facts and evidence." Commonwealth's Brief at 13 (citations omitted).

properly introduced at trial."). *See also Commonwealth v. Chmiel*, 30 A.3d 1111, 1147 (Pa. 2011) ("The jury is presumed to have followed the court's instructions.") (citation omitted). No relief is due.

Lastly, Appellant contends the trial court erred by permitting Officer Harrison to testify about an interaction with Appellant near Camac Street, which resulted in the preparation of a pedestrian report. Of significance, the firearm used in the robbery was initially located on Camac Street by Theodore Coles, who resold it to Sam Hutson. The police recovered the firearm from Hutson. For the reasons that follow, we find this claim waived.

By way of further background, the Commonwealth sought to introduce Officer Harrison's testimony that he had "contact" with Appellant on Camac Street approximately eight months prior to the murder. N.T., 7/31/2014, at 76. The officer did not elaborate on why "contact" was made, but only testified that he encountered Appellant near Camac Street. Additionally, the Commonwealth also sought to introduce a portion of Kingwood's statement to police, as cited in more detail *supra,* wherein Kingwood stated that he did not know the name of "the second guy," but knew he "[hung] out on Camac Street." N.T., 7/28/2014, at 8-9.

Prior to opening statements the trial court addressed Appellant's objection to the introduction of the officer's testimony. *Id.* As aptly summarized by the trial court in its 1925(a) opinion:

[Appellant] sought to have the officer['s] testimony regarding his interactions with police near the 3600 block of Camac Street precluded from trial, based upon the inference that could be drawn by the jury that he was [the] other/second guy. *T[he trial] court agreed with [Appellant]* and indicated that the court'[s] ruling on the testimony would depend on how the Commonwealth presented the statement to the jury. As such, [the trial court] found that if the redacted statement were presented as referenced above, the officers *would not* be permitted to testify as to his presence near the 3600 block of Camac Street; however if the Commonwealth, instead, chose to further redact the statement and simply not present that portion [of Kingwood's statement], the officers would be permitted to testify as to such interactions with [Appellant. The Commonwealth chose to redact the above-referenced portion of Kingwood's statement and Officer Harrison testified about his contact with Appellant on January 1, 2011].

TCO, 7/8/2016, at 12-13 (footnotes omitted; emphasis in original).

Now, on appeal, Appellant argues that

[t]he testimony served one purpose, and one purpose only, and that was to smear the character of [Appellant]. The contact was remote in time to the incident in question and, hence, was not relevant. Moreover, limiting the testimony to "contact" did nothing to hide the fact that the police had looked into [Appellant] on a prior occasion. Surely the jury did not believe that the prior contact was the [o]fficer taking [Appellant] to a ball game or attend [Appellant's] relatives' wedding. It was police contact.

* * *

The evidence as offered would not tend to prove anything about the shooting in question. The only way that it could have any impact on this case was in the improper way of smearing [Appellant's] character.

* * *

Here, the evidence which was really not relevant at all, but if marginally relevant should have been excluded as the probative

of such evidence is outweighed by the danger of unfair prejudice.

Appellant's Brief at 17-18.

Appellant has waived this claim because he failed to raise this argument with the trial court. Indeed, Appellant's objection raised prior to trial was a concern regarding the effect the officer's testimony would have on Kingwood's redacted statement which the Commonwealth sought to introduce at trial. N.T., 7/28/2014, at 8-9. At that time, Appellant did not argue that, in addition to this concern, Appellant also believed the statement was prejudicial and did not serve any probative value. Furthermore, during Officer Harrison's testimony, Appellant did not make any objection on the record, other than objecting to the officer testifying regarding what address Appellant had given to him, to preserve his relevance argument. *See* N.T., 7/31/2014, at 76. Appellant cannot now craft a new legal theory upon which he contends the trial court erred. *See Commonwealth v. Phillips*, 141 A.3d 512, 522 (Pa. Super. 2016) ("Our Pennsylvania Rules of Appellate Procedure and our case law set forth the well-established requirements for preserving a claim for appellate review. Issues not raised in the lower court are waived and cannot be raised for the first time on appeal. This requirement bars an appellant from raising a new and different theory of relief for the first time on appeal.") (quotation marks and citations omitted). As such, the claim is waived.

Thus, after a thorough review of the record and briefs in this case, we are unconvinced that any of Appellant's arguments entitles him to relief.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.

Prothonotary

Date: 9/13/2017