J-S59037-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| SHAWN OMAR JACOBS | |
| Appellant | No. 2755 EDA 2014 |

Appeal from the PCRA Order August 26, 2014
in the Court of Common Pleas of Montgomery County Criminal Division
at No(s): CP-46-CR-0002057-2009

BEFORE: BENDER, P.J.E., OLSON, J., and FITZGERALD,[*] J.

MEMORANDUM BY FITZGERALD, J.:        **FILED JANUARY 04, 2017**

Shawn Omar Jacobs ("Appellant") appeals from the order of the Montgomery County Court of Common Pleas denying his first petition for relief filed under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-9546. We affirm.

On December 10, 2008, Appellant and his co-defendant, Stanley Howard, ("Howard") committed the armed robbery of Jamal Terry ("Terry") and Andrew Willis ("Willis"), during the course of which Appellant shot and killed Terry. At the conclusion of a joint trial on August 21, 2009, the jury convicted Appellant of first-degree murder and Howard of second-degree murder. The jury also convicted both men of robbery and related offenses. The PCRA court summarized Willis's trial testimony as follows:

---

[*] Former Justice specially assigned to the Superior Court.

[Willis] testified that, shortly after 11 p.m. on the night of December 10, 2008, he and [Terry] went to the Golden Dragon restaurant at the corner of Powell and Spruce Streets so that [Terry] could purchase cigarettes. Inside the restaurant, [Willis] noticed two men "standing by the door, just hanging around." At trial, [Willis] definitively identified these two men as [Appellant] and [Howard]. [Willis] testified that he was "one hundred percent sure" of the accuracy of his identification.

[Willis] testified that he and [Terry] left the Golden Dragon and were walking down Powell Street when [Terry] suddenly stopped. [Willis] turned to see why [Terry] had stopped and saw that [Appellant] and Howard were approaching them. [Willis] saw that Howard was armed with a handgun.

[Willis] testified that Howard took physical control of him, pulling him by the shirt and compelling him to proceed to a yard adjacent to 1064 Powell Street, where he forced [Willis] to lie on the ground. [Appellant] meanwhile, had taken physical control of [Terry]. [Willis] could hear [Appellant] demanding that [Terry] give him "money or anything valuable he had on him."

Still armed with the handgun, Howard ordered [Willis] to empty his pockets. [Willis] removed cash and a cell phone from his pockets. Howard picked up the phone and the cash and then pistol-whipped [Willis] three times in the head. As he lay on the ground, [Willis] could hear [Terry] telling [Appellant] to take whatever he wanted from him.

Howard then forced [Willis] to get back on his feet. Holding his gun to [Willis's] back, Howard compelled [Willis] to go into a side yard, where he ordered [Willis] to go down onto his knees and put his hands on his head. From this vantage point, [Willis] could see [Appellant] and [Terry] on the sidewalk. [Willis] could hear [Appellant] ordering [Terry] to surrender his valuables and [Terry] continuing to tell [Appellant] to take whatever he wanted. Howard – who was still with [Willis] in the side yard – then instructed [Appellant] "to stop playing with him, smack him up."

- 2 -

At this point, Howard again forced [Willis] to lie on the ground, following which Howard left the side yard and went to [Appellant], giving [Appellant] his handgun, again telling [Appellant] to "smack him up" and stop playing with him."

Howard then returned to the side yard, put his fist to [Willis's] back, and began rifling through [Willis's] pockets, demanding to know what else [Willis] had, taking [Willis's] wallet and a second cell phone. From where he lay, [Willis] heard [Appellant] demanding that [Terry] give him "what's in your pockets," and [Terry] continuing to tell [Appellant] to take anything he wanted. [Willis] then began shouting himself, telling Howard and [Appellant] to take whatever they wanted because he and [Terry] want to go home to their families.

[Willis] testified that the next thing that happened was that he heard a single gunshot, coming from "the area where [Terry] and [Appellant] were standing," following which Howard and [Appellant] fled the scene.

PCRA Ct. Op., 8/14/15, at 1-4 (citations omitted). Officers from the Norristown Police Department arrived on scene within minutes. Terry was transported to a hospital, but was pronounced dead on arrival.

On January 11, 2010, the trial court sentenced Appellant to an aggregate term of life in prison, as well as a consecutive term of fifteen to thirty years of imprisonment.[1] Appellant filed a timely appeal to this Court. Among his issues raised was a claim that the prosecutor committed a

_____

[1] The trial court sentenced Howard to an aggregate term of life in prison, and a consecutive term of five to ten years of imprisonment. In an unpublished memorandum filed on November 3, 2010, we affirmed his judgment of sentence. *See Commonwealth v. Howard*, 681 EDA 2010 (Pa. Super. Nov. 3, 2010) (unpublished memorandum).

- 3 -

violation of **Bruton v. United States**, 391 U.S. 123 (1968), when, during his closing argument, the prosecutor referenced Appellant by name while discussing a statement to the police made by Howard that had been admitted into evidence at trial in redacted form. Although trial counsel raised an appropriate objection at trial, Appellant claimed that the trial court erred in failing to rule on the objection.

In an unpublished memorandum filed on December 7, 2010, this Court affirmed on the basis of the opinion prepared by the trial court and affirmed the judgment of sentence. **See Commonwealth v. Jacobs**, 353 EDA 2010 (Pa. Super. Dec. 7, 2010) (unpublished memorandum). On May 3, 2011, our Supreme Court denied Appellant's petition for allowance of appeal. **Commonwealth v. Jacobs**, 21 A.3d 1191 (Pa. 2011). The United States Supreme Court denied Appellant's petition for writ of *certioriari* on February 21, 2012. **Jacobs v. Pennsylvania**, 132 S. Ct. 1580 (2012).

On July 19, 2012, Appellant filed a timely *pro se* PCRA petition. The PCRA court appointed counsel and, on June 21, 2013, PCRA counsel filed an amended PCRA petition. The Commonwealth filed its answer on July 13, 2013. The PCRA court held an evidentiary hearing on January 23, 2014. Subsequently, Appellant informed the court that he wished to raise an additional issue, and PCRA counsel filed a second amended petition. In light of this newly raised issue, the PCRA court held an additional hearing on August 7, 2014. By order entered August 25, 2014, the PCRA court

dismissed Appellant's petition. PCRA counsel filed a timely appeal on Appellant's behalf, as well as a timely Pa.R.A.P. 1925(b) statement of errors complained of on appeal.

After this Court granted the PCRA court's request for an extension of time in which to file its Pa.R.A.P. 1925(a) opinion, the PCRA court received from Appellant a *pro se* "Motion to Waive the Right to Counsel and Proceed *Pro Se*," in which he requested a hearing pursuant to **Commonwealth v. Grazier**, 713 A.2d 81 (Pa. 1998). A **Grazier** hearing was held on April 14, 2015, and, after an on-the-record colloquy with Appellant, the PCRA court determined that Appellant knowingly, voluntarily, and intelligently waived his right to counsel. Accordingly, Appellant was permitted to proceed *pro se*, and the PCRA court afforded him thirty days to file a *pro se* Rule 1925(b) statement. When Appellant failed to do so, the PCRA court afforded him an additional twenty-one days to file his statement. The PCRA court informed Appellant that if he still did not file a *pro se* statement, the court would prepare its Rule 1925(a) opinion by addressing the claims in the Rule 1925(b) statement previously filed by counsel. Because Appellant never filed a *pro se* statement, the PCRA court's Rule 1925(a) opinion addresses the claims that were raised by PCRA counsel.[2]

---

[2] Although Appellant did not comply with the PCRA court's order to submit a *pro se* Rule 1925(b) statement, we conclude that Appellant's issues were sufficiently preserved for our review. Our review of the record reveals a letter from Appellant that included a "draft" of the Rule 1925(b) statement

Appellant raises the following issues:

### POINT A

The prosecutor referenced [Appellant] by name twice while discussing Howard's—a non-testifying codefendant—redacted statement during his closing summation. Did this violate [Appellant's] Confrontation Clause rights? If so, the PCRA court abused its discretion by not finding trial counsel ineffective for objecting only after the prosecutor's second violative remark and not requesting a mistrial.

### POINT B

Willis observed [Appellant] on three prior occasions; once at a photo lineup, and twice in the media. Did [Appellant] stand out at the subsequent police arranged physical lineup procedure? If so, the PCRA court abused its discretion by not finding trial counsel ineffective for not seeking to suppress or otherwise object to [Willis's] identification testimony.

### POINT C

Were each of the claims presented here valid and prejudicial to [Appellant's] defense? If so, the PCRA court abused its discretion by not finding trial counsel ineffective for his multiple instances of deficient performance.

Appellant's Brief at 7.

Our scope and standard of review is well-settled:

In PCRA appeals, our scope of review is limited to the findings of the PCRA court and the evidence on the record of the PCRA court's hearing, viewed in the light most favorable to the prevailing party. Because most PCRA

---

to be filed by PCRA counsel. The claims raises in this letter and PCRA counsel's subsequently filed Rule 1925(b) statement are the same. Additionally, the trial court instructed Appellant that it would address the issues raised in counsel's Rule 1925(b) statement. Under these circumstances, we decline to find all issues waived based on Appellant's failure to file a *pro se* Rule 1925(b) statement.

appeals involve questions of fact and law, we employ a mixed standard of review. We defer to the PCRA court's factual findings and credibility determinations supported by the record. In contrast, we review the PCRA court's legal conclusions *de novo.*

*Commonwealth v. Reyes-Rodriguez*, 111 A.3d 775, 779 (Pa. Super. 2015) (internal citations and quotations omitted).

To obtain relief under the PCRA on a claim that counsel was ineffective, a petitioner must establish by a preponderance of the evidence that counsel's ineffectiveness so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. *Commonwealth v. Johnson*, 966 A.2d 523, 532 (Pa. 2009). "Generally, counsel's performance is presumed to be constitutionally adequate, and counsel will only be deemed ineffective upon a sufficient showing by the petitioner." *Id.* This requires the petitioner to demonstrate that: (1) the underlying claim is of arguable merit; (2) counsel had no reasonable strategic basis for his or her action or inaction; and (3) petitioner was prejudiced by counsel's act or omission. *Id.* at 533.

A finding of "prejudice" requires the petitioner to show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* (citation omitted). In assessing a claim of ineffectiveness, when it is clear that appellant has failed to meet the prejudice prong, the court may dispose of the claim on that basis alone, without a determination of whether the first two prongs

- 7 -

have been met. ***Commonwealth v. Travaglia***, 661 A.2d 352, 357 (Pa. 1995). Counsel cannot be deemed ineffective for failing to pursue a meritless claim. ***Commonwealth v. Loner***, 836 A.2d 125, 132 (Pa. Super. 2003) (*en banc*).

Moreover, trial counsel's strategic decisions cannot be the subject of a finding of ineffectiveness if the decision to follow a particular course of action was reasonably based and was not the result of sloth or ignorance of available alternatives. ***Commonwealth v. Collins***, 545 A.2d 882, 886 (Pa. 1988) (cited with approval by ***Commonwealth v. Hall***, 701 A.2d 190, 204 (Pa. 1997)). "[C]ounsel's approach must be so unreasonable that no competent lawyer would have chosen it." ***Commonwealth v. Ervin***, 766 A.2d 859, 862-63 (Pa. Super. 2000) (quoting ***Commonwealth v. Miller***, 431 A.2d 233, 234 (Pa. 1981). Our Supreme Court has defined "reasonableness" as follows:

> Our inquiry ceases and counsel's assistance is deemed constitutionally effective once we are able to conclude that the particular course chosen by counsel had *some reasonable* basis designed to effectuate his client's interests. The test is not whether other alternatives were more reasonable, employing a hindsight evaluation of the record. Although weigh the alternatives we must, the balance tips in favor of a finding of effective assistance as soon as it is determined that trial counsel's decision had any reasonable basis.

***Commonwealth v. Pierce***, 527 A.2d 973, 975 (Pa. 1987) (quoting ***Com. ex rel. Washington v. Maroney***, 235 A.2d 349, 352-53 (Pa. 1967)). ***See also Commonwealth v. Clark***, 626 A.2d 154, 157 (Pa. 1993) (explaining

that a defendant asserting ineffectiveness based upon trial strategy must demonstrate that the "alternatives not chosen offered a potential for success substantially greater than the tactics utilized"). A defendant is not entitled to appellate relief simply because a chosen strategy is unsuccessful. *Commonwealth v. Buksa*, 655 A.2d 576, 582 (Pa. Super. 1995).

In his first issue, Appellant "faults trial counsel for failing to object to the prosecutor's first violation of the rule set forth in [*Bruton*, *supra*], by referencing [his] name while discussing codefendant Howard's redacted statement." Appellant's Brief at 21. In addition, Appellant "faults [trial] counsel for not requesting a mistrial or a cautionary instruction after objecting to the prosecutor's second" *Bruton* violation. *Id.*

By way of background, during closing arguments, the prosecutor discussed Willis's identification testimony and argued why it was sufficient to convict Appellant of Terry's murder. The prosecutor then cited corroborating evidence that the Commonwealth had presented, including Howard's redacted statement, which corroborated the respective roles of Appellant and Howard in the murder and robbery:

> Furthermore, [Howard], in his statement to Detective McGowan, you remember the progression of truth, but when we ultimately got to the point where [Howard] told Detective McGowan the full truth, what did [Howard] say? What did he attribute that his role in the robbery was?
>
> He said that I was with this other person, and that I knew it was going to happen, and we were dressed in all black, and we were in the Golden Dragon, and we saw these two guys leave, and we followed them, and I knew

- 9 -

what was going to happen when the other person said, "we out," I knew it was going to happen, and we each took control of one of the different guys, but I didn't have control of the guy who died, I didn't shoot the guy who dies, I had control of the guy with the ponytail.

You look at [Willis]. [Willis] has a ponytail, and the only thing [Howard] reverses is he says he doesn't pistol whip [Willis]. [Howard] tries to take that off of himself, but he clearly implicates himself in the entire robbery, and in his own statement, he attributes his actions as being identical to the one that [Willis] has said, save the pistol whipping.

[Howard] says he is in control of [Willis]. He said that [**Appellant**] has control of [Terry]. So not only is [Willis's] testimony corroborated by the physical evidence at the scene, but it is also corroborated by [Howard's] statement given to Detective McGowan, less than a week after this crime occurred.

N.T., 8/21/09, at 51-52 (emphasis added). Trial counsel did not object to this first reference to Appellant's name when discussing Howard's redacted statement.

The prosecutor later asserted:

[I]t's reasonable to conclude that both of these individuals had contact with that gun, given that it was in close proximity to their position when they were found by the police, and, again, [Howard] testified [sic] that at the very least, both of them were holding it in the car.

But if you also recall, [Howard] said in his statement they were both holding it in the car, but you also recall that [Howard] said in his statement that [**Appellant**] had handled the gun on the night—

[TRIAL COUNSEL]: Objected to, Your Honor.

[THE PROSECUTOR]: Pardon me. That the other person had handled the gun on the night of the murder,

- 10 -

> and [Howard] had briefly handled that gun on the night of
> the murder.

N.T., 8/21/09, at 62 (emphasis added).[3]

As noted above, Appellant claimed on direct appeal that the trial court erred in failing to rule on an objection defense made after the prosecutor's second reference to Appellant's name. The trial court, in its Rule 1925(a) opinion issued in the direct appeal, characterized the purported **Bruton** violation as a "momentary slip" and concluded that "there was no *need* to sustain [trial counsel's] objection because [the prosecutor] immediately corrected himself." Trial Ct. Op., 5/19/10, at 18-19. This Court affirmed the judgment of sentence based on the trial court's opinion. **See Jacobs**, 353 EDA 2010 at 2-3. However, the trial court and this Court did not expressly consider a claim based on the prosecutor's first reference to Appellant by name. **See id.**; **see also** Trial Ct. Op. at 18-19.

In **Bruton**, the United States Supreme Court held that a criminal defendant's rights under the Confrontation Clause are violated when a trial court allows the prosecution to admit his or her non-tesifying co-defendant's statement that implicates him in the relevant crimes even if the trial court instructs the jury that they may only use the stated against the co-defendant. **Bruton**, 391 U.S. at 137. Subsequently, in **Richardson v.**

---

[3] The prosecutor's closing argument reveals several incidents when the prosecutor misstated the appropriate party, only to immediately correct himself. **See, e.g.**, N.T., 8/21/09 at 55 (misidentifying Appellant as the murder victim).

*Marsh*, 481 U.S. 200 (1987), the United States Supreme Court examined the "*per se Bruton* rule," and emphasized its narrow scope. The *Richardson* Court held that the "the Confrontation Clause is not violated by the admission of a nontestifying co-defendant's confession with a proper limiting instruction when . . . the confession is redacted to eliminate not only the defendant's name, but any reference to his or her existence." *Richardson*, 481 U.S. at 211.

Consistent with this precedent, the Pennsylvania Supreme Court has held that substituting a neutral phrase such as "the other guy" for the defendant's name is an appropriate redaction. *See Commonwealth v. Travers*, 768 A.2d 845, 851 (Pa. 2001). Our Supreme Court has also addressed the issue of whether the prosecutor's opening or closing remarks to the jury constitutes a separate *Bruton* violation by negating the proper redaction of a non-testifying co-defendant's confession. In *Commonwealth v. Brown*, 925 A.2d 147 (Pa. 2007), the Court examined the circumstances surrounding a purported *Bruton* violation during the prosecutor's argument and concluded that the defendant's confrontation rights were not violated in light of the proper redaction of his co-defendant's confession at trial, and the "direct, unequivocal, and strong" curative instruction the trial court gave to the jury that the confession could not be used in any way against the defendant. *Brown*, 925 A.2d at 161. Stated differently, the *Brown* Court

held that "[i]n light of the context and circumstances of the misstatement . . . we hold that **Bruton's** *per se* rule does not apply." **Id.** at 160.

The PCRA court considered this issue as follows:

> As we explained in our [direct appeal] opinion, we saw no need to formally rule upon [trial counsel's] objection as to do so would have been to needlessly call attention to [the prosecutor's] remark, which was plainly an inadvertent slip of the tongue. As we further explained, [Appellant] was–in any event–entitled to no appellate relief on the basis of [the prosecutor's] remark. In [**Brown**], our Supreme Court held that a prosecutor's reference to a defendant by name in his closing – when discussing a non-testifying co-defendant's statement that had been redacted to eliminate reference to the defendant by name – did **not** implicate the *per se* rule of **Bruton**, **supra**. The Court held that, in such circumstances, when the jury was properly instructed that the statement was to be considered only as evidence against the defendant who made the statement, the court may properly find that there was no prejudice. As we further noted in our opinion, in the instant case–as in **Brown**, **supra**–the undersigned explicitly instructed the jurors that, while they could consider defendant Howard's statements against defendant Howard, if they so chose, "You must not, however, consider the statement against defendant [Appellant]. You must not use the statement in any way against [Appellant.]"
>
> \* \* \*
>
> In regard to the first comment by [the prosecutor], it is plain on the face of the record that [the prosecutor] was addressing defendant **Howard's** role in the crime, and was discussing the manner in which Howard's statement served to corroborate the testimony of [Willis] that implicated **Howard**. In any event, to the extent that the [prosecutor's] fleeting reference to [Appellant] by name in this comment could be said to have in any way worked arguable prejudice against [Appellant], any such prejudice was cured by the undersigned's clear instruction that Howard's statement could **only** be considered as evidence

- 13 -

> against defendant **Howard**, and **not** as evidence as to [Appellant].

PCRA Court Opinion, 8/14/15, at 22, 23-24 (some citations omitted).

Our review reveals no basis to disturb the PCRA court's conclusion. *See Brown*, 925 A.2d at 160-61. *See also Commonwealth v. Roney*, 79 A.3d 595, 629 (Pa. 2013) (acknowledging "that the United States Supreme Court has not extended the reach of its *per se* **Bruton** rule to comments by counsel, which are by definition nonevidentiary"); *Commonwealth v. James*, 66 A.3d 771, 781 (Pa. Super. 2013) (concluding that no **Bruton** violation occurred given circumstances of the prosecutor's misstatement and curative instruction given by the trial court). Appellant has not demonstrated the prosecutor's inapt remarks constituted a *per se* violation of **Bruton**. Moreover, Appellant fails to demonstrate any error in the PCRA court's reasoning that any prejudice arising from the remarks did not require a mistrial and could be cured by the Court's **Bruton** instruction to the jury. *See Brown*, 925 A.2d at 160-61 (recognizing the trial court is in the best position to determine whether the misstatement is curable). Lastly, we conclude the evidence against Appellant was overwhelming and there is no reasonable basis to conclude that outcome at trial would have been different had trial counsel objected or requested a mistrial. Thus, Appellant's first claim fails.

Appellant next claims that trial counsel was ineffective for failing to seek suppression of Willis's pre-trial identification. Appellant asserts that

trial counsel should have moved to suppress Willis's pre-trial identification of him because "the record establishes that [Willis's] pre-trial and in-court identifications resulted from the detective['s] use of an unnecessarily suggestive identification procedure that created a substantial likelihood of misidentification." Appellant's Brief at 21. According to Appellant, trial counsel's failure to file a suppression motion on this basis "permitted the [jury] to use tainted, unreliable and hence inadmissible identification testimony in evaluating [his] guilt." *Id.* at 22. Finally, Appellant asserts prejudice because, absent Willis's identification of him, there was insufficient evidence to support his murder conviction.

"When . . . an assertion of ineffective assistance of counsel is based upon the failure to pursue a suppression motion, proof of the merit of the underlying suppression claim is necessary to establish the merit of the ineffective assistance of counsel claim." *Commonwealth v. Carelli*, 546 A.2d 1185, 1189 (Pa. Super. 1988) (citations omitted).[4]

An appellate court must assess the reliability of an out-of-court identification by examining the totality of the circumstances. *Commonwealth v. Johnson*, 139 A.3d 1257, 1278 (Pa. 2016). The mere fact that a witness was unsure about the identification does not mean that later identifications were unreliable—initial equivocation does not render

---

[4] Trial counsel unsuccessfully sought to suppress physical evidence, but did not challenge the reliability of the identification.

later identifications constitutionally unreliable *per se*. ***Id.*** A pre-trial identification violates due process only when the facts and circumstances demonstrate that the identification procedure was so impermissibly suggestive that it gave rise to a very substantial likelihood of irreparable misidentification. ***Johnson***, 139 A.3d at 1278.

The PCRA court found no merit to Appellant's ineffectiveness claim, explaining:

> In the instant case, the record reflects that, in oral and written statements to the police made shortly after the crime, [Willis] – while in a highly emotional state following the murder of his friend – provided arguably vague or inconsistent information concerning the respective heights, skin tones, and clothing of the perpetrators. As detailed at length above, however, [Willis] had more than ample opportunity to view the perpetrators, and [Willis] subsequently provided definitive identifications of [Appellant] upon viewing [Appellant] in person at a physical line-up on July 8, 2009, and in open court during [Appellant's] trial. Given this, the information initially provided by [Willis] concerning the appearance of the perpetrators goes to the **weight** to be accorded to [Willis's] identification of [Appellant] and **not** to the **admissibility** of the identification. We note that [trial counsel], indeed, zealously cross-examined [Willis] in regard to alleged inconsistencies in his descriptions of the perpetrators, so zealously that the undersigned repeatedly had to caution [trial counsel] not to be argumentative with the witness.
>
> We reject [Appellant's] contention that [Willis's] in-person identifications of [him] should be deemed unreliable because [Willis] had previously failed to definitively identify a photograph of [Appellant] from a photo array shown to him shortly after the murder of [Terry]. [Willis] testified at trial that, in fact, he **had** identified the photo of [Appellant] as an individual he was "pretty sure" was one of the perpetrators, but that couldn't

- 16 -

be **certain** because "The lighting on the photo made me – his skin tone was a little off, but I was pretty sure that it was him." [Willis] testified: "I said that his facial features resembled the short, but the skin tone in the picture seemed to be too dark." There is nothing here that renders [Willis's] subsequent definitive in-person identifications of [Appellant] inherently unreliable.

We also reject [Appellant's] contention that [Willis's] in-person identifications of [him] should be deemed unreliable because they came after [Willis] saw a photograph of [him] on the television news after [Appellant] was arrested. Again, [Willis] had **already** identified a photograph of [Appellant] as depicting the individual he was "pretty sure" was the perpetrator. Plainly, the record shows that [Willis] had an independent basis for identifying [Appellant], apart from the photograph he saw on television.

PCRA Ct. Op. at 14-16 (citations omitted).

Finally, the PCRA court rejected Appellant's attempt to base his ineffectiveness claim on the fact that Willis participated in a physical line-up. The court explained:

We additionally reject [Appellant's] claim that [Willis's] identification was inherently unreliable because it was tainted by an unfairly suggestive physical lineup on July 8, 2009. We likewise reject [his] contention that [trial counsel] was ineffective for agreeing to the lineup.

During the course of [Appellant's] first PCRA hearing, [trial counsel] testified at length as to his reasons for agreeing to the lineup, and the undersigned readily determined that [trial counsel] offered a reasonable strategic basis for the decision that was calculated to advance [Appellant's] interests. Stated succinctly, [trial counsel] testified that he believed that [Willis] would not be able to identify [Appellant] in the lineup. [Trial counsel] testified that he came to this conclusion: because [Willis] had provided the police with descriptive information that appeared inconsistent with [Appellant] being the

perpetrator; because [Willis] had been unable to conclusively identify [Appellant] in the photo array; because the lineup participants included individuals [trial counsel] believed [Willis] was likely to incorrectly identify as the perpetrator, and because [Appellant] told him that he ([Appellant]) was not at the scene of the crime. [Trial counsel] specifically noted that [Willis's] description of the perpetrator's skin tone and height appeared inconsistent with [Appellant's] appearance, and that there was a question "as to how much of the face [of the perpetrator] that was seen" by [Willis] at the time of the crime.

Given all these factors, we determined that [trial counsel's] decision to agree to a lineup constituted reasonable – albeit ultimately unsuccessful – strategy that was calculated to advance [Appellant's] interests. Obviously, had [Willis] *failed* to identify [Appellant] from the lineup – or had misidentified another individual – it would have been a significant boon to the defense.

The undersigned also rejected [Appellant's] contention that [trial counsel] should have refused to go forward with the lineup – or should have moved to suppress the resulting identification of [him] – on the grounds that the lineup was unfairly suggestive. This claim arises from the fact that [Appellant] – at the time of the lineup – had a tattoo on his right cheek. [Appellant] speculates that the presence of the tattoo made it probable that [Willis] would identify [him] as the perpetrator. There is no basis in the record for such speculation. First, [Appellant] did *not* have this tattoo on his face at the time of the robbery/murder, so its presence during the lineup could not be said to be unfairly suggestive as identifying the perpetrator in *that* regard. Second, there was introduced into the record absolutely no evidence to support [Appellant's] further speculation that the photograph of [him] that [Willis] saw on the television news depicted [Appellant] with a tattoo. Third, [Willis] gave no indication that the tattoo played *any* part in his identification, much less that he had seen a tattoo on [Appellant] in the photograph on television. At trial, [Willis] testified simply that he saw the photograph shown on television "momentarily, not even a whole minute, but long enough to know who it was, to realize who it was."

The record reflects that [trial counsel] actually initially attempted to arrange for the lineup to be conducted with [Appellant's] tattoo covered. [Trial counsel] testified that, when this proved impossible, he discussed with [Appellant] whether they should go forward with the lineup, and that they both decided to proceed. The undersigned fully credited [trial counsel's] testimony in this regard, and indeed, in its entirety.

PCRA Ct. Op. at 16-17 (citations omitted).

Given these determinations, the PCRA court concluded:

[Appellant] thus failed to establish that any motion to suppress [Willis's] identification of [him] would have been successful, and [trial counsel] cannot be found ineffective for failing to file such a motion. [Trial counsel] also cannot be found to have been ineffective for agreeing to submit [Appellant] to a physical lineup, because the procedure was not unduly suggestive under the circumstances and the decision to submit to the lineup was reasonably calculated to advance [Appellant's] interests.

*Id.* at 18.

Instantly, shortly after the victim's shooting, Howard and Appellant went to a house were they both got two teardrop tattoos put on their faces. N.T., 8/20/09, at 151. One week later, however, Appellant contacted the tattoo artist and had him change the teardrops to a crescent moon and a star. *Id.* at 162-63. On the night of the incident, Willis gave a description of the assailants to police. Shortly thereafter, he was shown a photo array. At that time, Willis positively identified Howard. Willis felt "pretty sure" one of the men in the photo array was Appellant, but equivocated because of how the picture depicted the man's skin tone. Approximately one week later, Willis saw a photograph of Appellant in a news report following

Appellant's arrest. After observing Appellant, Willis contacted the police and told them he was sure that Appellant was the man who killed Terry. Subsequently, Appellant participated in a prison line-up, and Willis immediately identified Appellant as the shooter.

Thus, the record supports the PCRA court's conclusions that any attempt to suppress Willis's identification testimony would be meritless. The PCRA court credited the testimony of counsel over the testimony and other allegations made by Appellant at the PCRA hearing. We cannot disturb this determination. *See Commonwealth v. Battle*, 883 A.2d 641, 648 (Pa. Super. 2005) (explaining that credibility determinations are solely within the province of the PCRA court). Moreover, although, in hindsight and contrary to trial counsel's belief, Willis did identify Appellant as the perpetrator, counsel's failed strategy does not establish his ineffectiveness. *Buksa*, 655 A.2d at 582. Because trial counsel cannot be deemed ineffective for failing to file a meritless suppression motion, Appellant's second issue fails. *Loner*, 836 A.2d at 132.

In his final issue, Appellant argues cumulative prejudice. Since we have already determined that Appellant's second claim lacks merit and/or that trial counsel had a reasonable basis for his actions, we need not address this claim further. *See Johnson*, 139 A.3d at 1287 (citation omitted) (reiterating that "no number of failed claims may collectively warrant relief if they fail to do so individually").

Order affirmed.

- 20 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/4/2017