MAINE SUPREME JUDICIAL COURT                              Reporter of Decisions
Decision:     2013 ME 114
Docket:       Ken-12-574
Argued:       October 8, 2013
Decided:      December 24, 2013

Panel:        SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and
              JABAR, JJ.

THANKS BUT NO TANK et al.

v.

DEPARTMENT OF ENVIRONMENTAL PROTECTION

JABAR, J.

[¶1]   Thanks But No Tank and several individuals (collectively, TBNT) appeal from a judgment entered in the Superior Court (Kennebec County, *Mills, J.*) affirming the decision of the Department of Environmental Protection to grant DCP Midstream Partners, LP, a permit to construct a liquefied petroleum gas terminal in Searsport.  *See* 5 M.R.S. § 11007(4)(A) (2012); M.R. Civ. P. 80C. After the Superior Court entered its judgment, DCP voluntarily surrendered the permit that is the subject of this appeal and filed a motion to dismiss this appeal as moot, which we granted on May 9, 2013.  *See* 38 M.R.S. § 344(10) (2012) (providing that a licensee may voluntarily surrender a permit with Department approval); 2 C.M.R. 06 096 002-10 § 23 (2013).  TBNT argues that we should vacate the Superior Court's judgment because it is now moot.  Additionally, TBNT argues that it is a prevailing party pursuant to 14 M.R.S. § 1501 (2012) and is

therefore entitled to recover the costs of its appeal. We disagree and dismiss this appeal without awarding costs.

## I. BACKGROUND

[¶2]  In May 2011, DCP applied to the Department of Environmental Protection for a permit to construct a liquefied petroleum gas terminal near Searsport. According to the Department's findings, the $40 million-project proposal featured the installation of a 22.7 million-gallon propane storage tank, a pier equipped to ship up to about 2.5 million barrels of liquefied petroleum gas annually, and stations for loading fuel trucks and railcars. To complete the project, DCP sought a permit from the Department pursuant to the Natural Resources Protection Act to construct a pipeline over a portion of coastal wetland, alter about two acres of forested freshwater wetland, and install a culvert to divert a stream on the property. *See* 38 M.R.S. §§ 480-D, 480-X (2012); 2 C.M.R. 06 096 310-1, -3 to -6 §§ 2, 4-5 (2009). DCP also applied for the Department's approval of the project pursuant to the Site Location of Development statute, *see* 38 M.R.S. §§ 482(2), 483-A(1) (2012), and sought a water quality certification pursuant to the Clean Water Act, *see* 33 U.S.C.A. § 1341 (West, Westlaw through P.L. 113-52).

[¶3]  In October 2011, the Department approved the permit. Landowners and residents of Searsport and neighboring Stockton Springs, some of whom formed the group "Thanks But No Tank," sought review of the Department's

decision in the Superior Court, raising numerous issues relating to the Department's conclusions that (1) DCP had met the visual impact standards; (2) projected impacts on natural resources from potential accidents met statutory requirements; (3) the project would meet air emissions standards, despite the Department's failure to consider auxiliary emissions sources; and (4) the project would meet noise standards. DCP countered that at least nineteen of the twenty-one members of TBNT were not abutting property owners and thus lacked standing to challenge the permit.

[¶4] The Superior Court noted in its November 13, 2012, decision that the evidence in the record was "insufficient to allow the court to determine whether TBNT has standing," and it dismissed the case with respect to the disputed nineteen individuals. However, the court concluded that the standing issue was not "fatal" to its review of the merits with respect to the two undisputedly abutting landowners. The court affirmed the Department's decision, concluding that the Department did not err in making its factual findings or in applying the relevant statutory standards and regulations. TBNT timely appealed pursuant to 5 M.R.S. § 11008 (2012) and M.R. App. P. 2(b)(3).

[¶5] On April 5, 2013, four months after TBNT filed its notice of appeal, DCP petitioned the Department to surrender the permits that are the subject of this case. *See* 38 M.R.S. § 344(10); 2 C.M.R. 06 096 002-10 § 23. In its petition for

surrender, DCP stated, "[T]he Town of Searsport Planning Board has indicated that it will not approve the Project as currently configured. As a result DCP has withdrawn its municipal application and determined not to proceed with the Project." The Department granted DCP's petition, noting that DCP had not yet commenced any on-site activities.

[¶6] On April 18, four days after the Department granted the petition, the Department and DCP moved to dismiss this appeal as moot. TBNT responded, urging us to vacate the judgment of the Superior Court because it is now moot or, alternatively, to determine that the Department lacked jurisdiction to accept DCP's petition to surrender the permit given the pending appeal from the judicial review pursuant to 5 M.R.S. § 11008 and M.R. Civ. P. 80C. *See York Hosp. v. Dep't of Health & Human Servs.*, 2008 ME 165, ¶¶ 33-36, 959 A.2d 67 (stating that an agency lacks jurisdiction to make certain modifications to a decision that is the subject of a pending judicial review). On May 9, 2013, we dismissed this appeal as moot except with regard to two issues for which we requested briefing: (1) whether we should vacate the Superior Court's judgment because DCP's voluntary surrender of its permit rendered the case moot, and (2) whether TBNT is entitled to costs as a prevailing party pursuant to 14 M.R.S. § 1501.

## II. DISCUSSION

A.    Vacatur for Mootness

[¶7]  TBNT argues that, as a matter of equity, we should vacate the Superior Court's judgment without considering the merits of the appeal because this case is now moot.  TBNT urges us to vacate the judgment of the trial court in a case that has become moot while the appeal was pending as a result of "happenstance," or a circumstance outside the control of either party, arguing that this approach has been adopted by the United States Supreme Court.  *See United States v. Munsingwear, Inc.*, 340 U.S. 36, 40 (1950).

[¶8]   In *Munsingwear*, the federal government had filed two separate lawsuits alleging that, during two separate time periods, Munsingwear had violated a regulation that fixed the maximum price of goods that it sold.  *Id.* at 37.  In the first case, the United States District Court concluded that Munsingwear had complied with the pricing regulations.  *Id.*  While the Government's appeal was pending, the commodity involved was "decontrolled," and the appeal was dismissed as moot.  *See Fleming v. Munsingwear, Inc.*, 162 F.2d 125, 127-28 (8th Cir. 1947).

[¶9]  Munsingwear then moved to dismiss the second case, arguing that the judgment in the first case applied to the same parties, involved the pricing of commodities controlled by the same regulation, and had not been modified, and,

therefore, it barred the parties from relitigating the merits of whether Munsingwear's sales violated the regulations in the second case. *Munsingwear, Inc.*, 340 U.S. at 37-38. As the Supreme Court later noted, the second case "f[ell] squarely within the classic statement of the rule of *res judicata*." *Id.* The motion to dismiss was granted. *See id.* at 37; *United States v. Munsingwear, Inc.*, 178 F.2d 204, 209 (8th Cir. 1949) (affirming the District Court's dismissal).

[¶10] On appeal from that dismissal, the Government urged the Supreme Court to make an exception to the res judicata doctrine because a change in the law, an action outside of its control, deprived it of an appeal on the merits. *Munsingwear, Inc.*, 340 U.S. at 39. The Supreme Court determined that the appropriate remedy was not an exception to the rule of res judicata but rather vacatur of the lower court judgment in the first case because it was rendered moot. *Id.* at 39-41. The Court noted,

> That procedure clears the path for future relitigation of the issues between the parties and eliminates a judgment, review of which was prevented through happenstance. When that procedure is followed, the rights of all parties are preserved; none is prejudiced by a decision which in the statutory scheme was only preliminary.

*Id.* at 40.

[¶11] Nearly twenty-five years later, the Supreme Court clarified its reference to "happenstance," stating that it "must be understood as an allusion to this equitable tradition of vacatur. A party who seeks review of the merits of an

adverse ruling, but is frustrated by the vagaries of circumstance, ought not in fairness be forced to acquiesce in the judgment." *U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 25 (1994). However, the *Bancorp* Court explained that the party requesting vacatur must demonstrate "more than that"; the party seeking to vacate a lower court's judgment must demonstrate "equitable entitlement to the extraordinary remedy of vacatur." *Id.* at 26. The Court indicated that it would "take account of the public interest" when asked to vacate a court's judgment. *See id.* at 26-27.

[¶12] We agree with this approach and conclude that even if TBNT could demonstrate that review of this case was prevented through happenstance, it has not met its burden of demonstrating an entitlement to vacatur. *See id.* at 26. First, TBNT has not demonstrated that it would be precluded by the rule of res judicata from litigating similar issues. *Cf. Munsingwear*, 340 U.S. at 38. Second, TBNT has not demonstrated a public interest in vacating the judgment of the Superior Court. TBNT argues that the court's decision is "preliminary" because TBNT was unable to appeal the judgment and, therefore, "the decision [should] be allowed neither preclusive nor precedential effect." However, inability to appeal, without more, is insufficient to warrant a public interest in vacatur of a moot judgment. The assertion that we should vacate a court's judgment because it might have been overturned on appeal is insufficient to warrant the application of this

8

"extraordinary" equitable remedy. *See Bancorp*, 513 U.S. at 26, 28 ("We . . . assert the inappropriateness of disposing of cases, whose merits are beyond judicial power to consider, on the basis of judicial estimates regarding their merits."). Therefore, we dismiss this appeal and decline to vacate the judgment of the Superior Court.

B.    Costs

[¶13]    TBNT argues that it is a prevailing party pursuant to 14 M.R.S. § 1501 and M.R. App. P. 13(a) because its actions in opposing the conditional use permit led to the Searsport Planning Board's decision to deny the permit, which ultimately resulted in this appeal becoming moot. Title 14 M.R.S. § 1501 provides in relevant part: "In all actions, the party prevailing recovers costs unless otherwise specially provided." We apply a functional analysis to determine which party "prevailed." *Flaherty v. Muther*, 2011 ME 32, ¶ 89, 17 A.3d 640. "By a 'functional analysis' we mean[] that one must look at the lawsuit as a whole to determine which party was the 'winner' and which the 'loser.'" *Dodge v. U.S. Servs. Auto. Ass'n*, 417 A.2d 969, 975 (Me. 1980) (quoting *Inhabitants of the Town of Sabattus v. Bilodeau*, 395 A.2d 123, 124 (Me. 1978)). "[T]he determination of a successful party . . . is to be based upon success upon the merits . . . ." *Hoitt v. Hall*, 661 A.2d 669, 674 (Me. 1995) (quotation marks omitted).

[¶14]   This case was mooted pending appeal, and the only evidence in the record about the reasons that led DCP to surrender the permit are in DCP's petition to surrender, where DCP stated that its decision was "a result" of "the Town of Searsport Planning Board['s] . . . indicat[ion] that it will not approve the Project as currently configured."   The connection between the decision by the Searsport Planning Board to deny a conditional use permit and the merits of this appeal—concerning the decision by the Department of Environmental Protection to grant an environmental permit—is too tenuous to sustain an award of costs.[1]   Rather, TBNT has "obtained precisely nothing that [it] could not have had without [this] litigation."   *Dodge*, 417 A.2d at 975.   Therefore, it is not a "prevailing party" within the meaning of 14 M.R.S. § 1501.

The entry is:

Appeal dismissed and costs denied.

---

[1]   We also decline to address the catalyst theory, which provides that a party may be considered "prevailing" when it "achieved the desired result because [it] brought about a voluntary change in the defendant's conduct." *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 600 (2001), *superseded by statute on other grounds*, OPEN Government Act of 2007, Pub. L. No. 110–175, § 4, 121 Stat. 2524, 2525 (codified at 5 U.S.C.A. § 552(a)(4)(E)(ii) (West, Westlaw through P.L. 113-52)); *see also Doe I v. Williams*, 2013 ME 24, ¶¶ 82-83, 61 A.3d 718 (declining to address the catalyst theory where a party's victory stemmed from changes in legislation, rather than as a result of the litigation).

**On the briefs:**

Stephen F. Hinchman, Esq., and Kimberly J. Ervin Tucker, Esq., Law Offices of Stephen F. Hinchman, LLC, West Bath, for appellants Thanks But No Tank et al.

James T. Kilbreth, Esq., Drummnd Woodsum, Portland, for appellees DCP Midstream Partners, LP

Janet T. Mills, Attorney General, and Margaret Bensinger, Asst. Atty. Gen., Office of Attorney General, Augusta, for appellee
Maine Department of Environmental Protection

**At oral argument:**

Stephen F. Hinchman, Esq., for appellants Thanks But No Tank, et al.

Adrianne E. Fouts, Esq., Drummond Woodsum, for appellees DCP Midstream Partners, LP

Margaret Bensinger, Asst. Atty. Gen., for appellee Maine Department of Environmental Protection