J-S53009-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| KEVIN WILLIAMS | : | |
| | : | |
| Appellant | : | No. 355 EDA 2018 |

Appeal from the PCRA Order January 17, 2018
in the Court of Common Pleas of Philadelphia County
Criminal Division at No.:  CP-51-CR-0002781-2011

BEFORE:   GANTMAN, P.J., OTT, J., and PLATT*, J.

MEMORANDUM BY PLATT, J.:                **FILED OCTOBER 15, 2018**

Appellant, Kevin Williams, appeals from the order dismissing his counseled first petition pursuant to the Post Conviction Relief Act, 42 Pa.C.S.A. §§ 9541-9546.  Appellant claims ineffective assistance of counsel.  We affirm, in part on the basis of the PCRA court opinion.

In its opinion, the PCRA court fully and correctly sets forth the relevant facts and procedural history of this case.  Therefore, we need not restate them at length here.  We note for the convenience of the reader that a jury convicted Appellant of murder of the third degree, criminal conspiracy, and three counts of robbery.  Appellant acted as the driver in an armed street robbery of three victims, strangers who happened to be walking down the street.  When one of the three victims resisted, he was shot and killed.

_____

* Retired Senior Judge assigned to the Superior Court.

The sentencing court noted that in imposing Appellant's sentence it was informed by the pre-sentence investigation report (PSI). (*See* PCRA Court Opinion, 2/22/18, at 13). The court imposed an aggregate sentence of not less than thirty-five years and not more than seventy years of incarceration in a state correctional institution. The court also denied Appellant's post-sentence motion. This Court affirmed the judgment of sentence on direct appeal. (*See Commonwealth v. Williams*, 2015 WL 6870629, at *7 (Pa. Super. filed Nov. 6, 2015) (unpublished memorandum)). Appellant did not petition for allowance of appeal to our Supreme Court.

In this collateral appeal, Appellant claims ineffective assistance of counsel.[1] Appellant presents three issues for our review. We reproduce Appellant's claims verbatim:

> Was the Appellant denied effective assistance of counsel at trial, sentencing and on direct appeal?
>
> 1. Failure to object to *Bruton* violation;
>
> 2. Failure to object to flawed jury instructions regarding Murder of the Third Degree; and
>
> 3. Failure to object to harsh sentence imposed without reasons.

(Appellant's Brief, at 3) (unnecessary capitalization omitted).[2]

---

[1] We note that Appellant's brief incorrectly refers to this proceeding as a "direct appeal." (Appellant's Brief, at 4).

[2] *See Bruton v. United States*, 391 U.S. 123 (1968).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the PCRA court, we conclude that there is no merit to the first claim that Appellant has raised. The PCRA court opinion properly disposes of the issue presented. (*See* PCRA Ct. Op., at 4-8) (concluding: (1) co-conspirator's statement was properly redacted, comported with precedent, and was fittingly admitted with cautionary instructions to the jury).

With respect to the second and third claims, we note that Appellant has failed to insure that the certified record included the transcripts of the proceedings which Appellant now challenges on appeal. Specifically, Appellant has failed to include the jury instructions now claimed to be erroneous, and the transcript of the sentencing hearing, at which he claims the sentencing court imposed a harsh sentence. These omissions are substantial, because they preclude any meaningful review of Appellant's specific claims.

> The fundamental tool for appellate review is the official record of the events that occurred in the trial court. To ensure that an appellate court has the necessary records, the Pennsylvania Rules of Appellate Procedure provide for the transmission of a certified record from the trial court to the appellate court. The law of Pennsylvania is well settled that matters which are not of record cannot be considered on appeal. Thus, an appellate court is limited to considering only the materials in the certified record when resolving an issue. In this regard, our law is the same in both the civil and criminal context because, under the Pennsylvania Rules of Appellate Procedure, any document which is not part of the officially certified record is deemed non-existent—a deficiency which cannot be remedied merely by including copies of the missing documents in a brief or in the reproduced record. The emphasis on the certified record is necessary because, unless the trial court certifies a document as

- 3 -

part of the official record, the appellate judiciary has no way of knowing whether that piece of evidence was duly presented to the trial court or whether it was produced for the first time on appeal and improperly inserted into the reproduced record. Simply put, if a document is not in the certified record, the Superior Court may not consider it.

***Commonwealth v. Preston***, 904 A.2d 1, 6–7 (Pa. Super. 2006), *appeal denied*, 916 A.2d 632 (Pa. 2007) (citations omitted).

Accordingly, Appellant has waived his second and third claims.[3]

Moreover, even if Appellant's claims were reviewable, under generally applicable legal principles, we would affirm on the basis of the PCRA court's opinion. (***See*** PCRA Ct. Op., at 7-14) (concluding counsel properly declined to object to jury charge which, read in its entirety, was clear, adequately and correctly reflected the law, and was more than sufficient to guide jurors through their deliberations; and sentencing judge properly sentenced Appellant after review of PSI).

Order affirmed.

_____

[3] ***See also Commonwealth v. Ventura***, 975 A.2d 1128, 1135 (Pa. Super. 2009), *appeal denied*, 987 A.2d 161 (Pa. 2009) (sentencing judge can satisfy requirement that reasons for imposing sentence be placed on record by indicating that she has been informed by pre-sentencing report; thus properly considering and weighing all relevant factors).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/15/18

**IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY**
**FIRST JUDICIAL DISTRICT OF PENNSYLVANIA**

FILED
2018 FEB 22 AM 10: 32

OFFICE OF JUDICIAL RECORDS
CRIMINAL DIVISION
FIRST JUDICIAL DISTRICT
OF PENNSYLVANIA

COMMONWEALTH OF PENNSYLVANIA      :      CRIMINAL TRIAL DIVISION

                :

v.                      :      355 EDA 2018

                :

KEVIN WILLIAMS            :      CP-51-CR-0002781-2011



CP-51-CR-0002781-2011 Comm. v. Williams, Kevin
Opinion

**OPINION**

O'KEEFE, J.

8072814711

Kevin Williams appeals from the order denying his Post Conviction Relief Act Petition (hereinafter referred to as "PCRA" for the sake of brevity) pursuant to 42 Pa.C.S. § 9541 *et seq.*

**PROCEDURAL HISTORY:**

On November 12, 2010, Kevin Williams was arrested and charged with murder, criminal conspiracy (three counts), robbery (three counts), violation of the Uniform Firearms Act (two counts), attempted theft (two counts), simple assault (two counts), recklessly endangering another person (two counts) and possessing the instrument of a crime (three counts). The defendant was bound over for court on all charges following a preliminary hearing on March 8, 2011. The first jury trial commenced September 27, 2012, concluding in a mistrial. The second panel was selected on November 18, 2013, with the jury convicting Williams of murder of the third degree, criminal conspiracy and three counts of robbery on November 26th. The defendant was sentenced to twenty

1

to forty years' incarceration for murder of the third degree, a consecutive five to ten years for criminal conspiracy, a consecutive ten to twenty years for the first robbery, and five to ten years concurrent for each of the other robbery counts for an aggregate sentence of thirty-five to seventy years imprisonment. On November 6, 2015, the Pennsylvania Superior Court affirmed the judgment of sentence. *Commonwealth v. Williams*, 1802 EDA 2014 (Pa.Super. 2015). No petition for allowance of appeal was filed with our Supreme Court.

A counseled PCRA petition was filed on December 1, 2016. The prosecution filed a Motion to Dismiss on July 31, 2017, to which the defendant responded on November 14th. After an independent review of the record, a Rule 907 Notice of Intent to Dismiss was mailed to the defendant and all counsel. Williams objected, and after another review of the record, the defendant's PCRA petition was dismissed on January 17, 2018. When a counseled Notice of Appeal was filed on January 25th, an order pursuant to Pennsylvania Rule of Appellate Procedure 1925(b) was served upon counsel, requiring a statement of matters complained of on appeal to which the defendant timely responded.

## STANDARD OF REVIEW:

When reviewing an order denying a PCRA petition, an appellate court looks to whether the PCRA court's decision is supported by the evidence of record and is free of legal error. *Commonwealth v. Spotz*, 624 Pa. 4, 84 A.3d 294 (2014). On questions of law, the standard of review is *de novo* and the scope of review is plenary. *Commonwealth v. Henkel*, 90 A.3d 16, 20 (Pa.Super. 2014). The court will grant great deference to the factual findings of the PCRA court and will not disturb those facts unless they have no support in the record. *Id.*

2

## FACTS:

The trial court fittingly summarized the pertinent facts as follows:

On October 20, 2010, Appellant, Kevin Williams, invited co-defendant, Dawud Abdul-Hakim ("Abdul-Hakim"), and an unidentified male to smoke weed in his car. While sitting in Appellant's car, Abdul-Hakim said he wanted to try to Rob somebody before he went home, and the unidentified male wanted to do the same. Abdul-Hakim had a .40 caliber Glock pistol on his person. At approximately 11:20 PM, Appellant was driving west on Jackson Street in the City and County of Philadelphia when Abdul-Hakim suggested they Rob three (3) men they saw walking north on Second Street towards Jackson Street. The three (3) men walking north on Second Street were childhood friends Jason Moncrief ("Moncrief"), Andrew Lillie ("Lillie") and Decedent, Anthony DeMarco Jr. ("DeMarco"). The unidentified male told Appellant to stop the car, said he would be right back, and instructed Appellant to stay there. Abdul-Hakim and the unidentified male exited Appellant's car on to the sidewalk ahead of Moncrief, Lillie, and DeMarco, and walked slowly so the three (3) men could catch up. Appellant backed his car onto nearby Philip Street where he could see Moncrief, Lillie, DeMarco, Abdul-Hakim, and the unidentified male. Appellant kept his car running in the middle of Philip Street and turned off his headlights.

As the two (2) groups converged, the unidentified male grabbed Moncrief and Abdul-Hakim grabbed DeMarco, holding DeMarco at gunpoint. The unidentified male and Abdul-Hakim directed Moncrief, Lillie, and DeMarco to give up their money, whereupon the unidentified male went into the pockets of Moncrief and retrieved $50. DeMarco refused to comply and was hit in the back of the neck with the gun by Abdul-Hakim. DeMarco then began to fight Abdul-Hakim, punching him repeatedly and wrestling Abdul-Hakim to the ground. During the fight Abdul-Hakim dropped the gun. The unidentified male picked up the gun, told DeMarco to get off of Abdul-Hakim, then fired six (6) shots at DeMarco, hitting him four (4) times and hitting Abdul-Hakim once (1) in the left hip. Lillie and Moncrief subsequently ran south on Second Street, Appellant drove west on Jackson Street, while Abdul-Hakim and the unidentified male ran west on Jackson Street.

DeMarco was shot one (1) time in the left flank; one (1) time

3

in the left hip; one (1) time in the mid back, where the bullet fractured a vertebra, then passed through the thorax, esophagus, heart and sternum; and one (1) time in the upper left back, injuring his lung. DeMarco was transported to Thomas Jefferson University Hospital, where he was pronounced dead at 12:07 AM by Dr. Jenoff. An autopsy was performed by Assistant Medical Examiner Dr. Aaron Rosen, who determined the cause of death was multiple gunshot wounds. The manner of death was found to be homicide. At the time of his arrest, Appellant made a detailed statement after receiving his Miranda warnings.

(Slip Opinion 11-10-14, pp. 2-4)

## LEGAL DISCUSSION:

### *Ineffective Assistance of Counsel*

The standard and scope of review for the denial of a PCRA petition is well-settled. The appellate court examines a PCRA appeal in the light most favorable to the prevailing party at the PCRA level. The court's review is limited to the findings of the PCRA court and the evidence of record. Additionally, the reviewing court grants great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record. In this respect, the appellate court will not disturb a PCRA court's ruling if it is supported by evidence of record and is free of legal error. However, where the petitioner raises questions of law, the standard of review is *de novo* and the scope of review is plenary. *Commonwealth v. Henkel*, 90 A.3d 16, 20 (Pa. Super. 2014), *appeal denied*, 101 A.3d 785 (Pa. 2014) (citations and quotation marks omitted).

Williams claims he is entitled to relief because trial counsel was ineffective. The law is crystal clear that counsel is presumed effective and a defendant claiming ineffective assistance of counsel bears the burden of proving otherwise. *Commonwealth v. Fears*, 624 Pa. 446, 86 A.3d

4

795 (2014); *Commonwealth v. Cross*, 535 Pa. 38, 634 A.2d 173 (1993). In order to overcome this presumption, a defendant must meet a three component standard set forth in *Strickland v. Washington*, 466 U.S. 668, (1984): First, the underlying claim must have arguable merit. *Commonwealth v. Rollins*, 558 Pa. 532, 542, 738 A.2d 435, 441 (1999); *Commonwealth v. Travaglia*, 541 Pa. 108, 661 A.2d 352, 356 (1995). Second, no reasonable basis must exist for counsel's actions or failure to act. In making this determination, the appellate court does not question whether there was a more logical course of action which counsel could have pursued, but rather did counsel's decision have any reasonable basis. *Commonwealth v. Rollins, supra,* 558 Pa. at 542, 738 A.2d at 441. Lastly, the defendant must establish that the he suffered prejudice because of counsel's error, such that there is a reasonable probability that the outcome of the proceeding would have been different absent such an error. *Commonwealth v. Fears, supra* 642 Pa. at 461, 86 A.3d at 804; *Commonwealth v. Lesko*, 609 Pa. 128, 15 A.3d 345, 373-74 (2011) (citing *Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973, 975 (1987)). It is not enough for the defendant to claim that counsel could have taken different steps, but rather, he must prove that counsel's strategy was "so unreasonable that no competent lawyer would have chosen it." *Commonwealth v. Dunbar*, 503 Pa. 590, 470 A.2d 74, 77 (1983); *Commonwealth v. Albrecht*, 510 Pa. 603, 511 A.2d 764, 775 (1986). Counsel is presumed to have rendered effective assistance, and, if a claim fails under any required element of the *Strickland* test, the court may dismiss the claim on that basis. *Commonwealth v. Vandivner*, 634 Pa. 482, 490, 130 A.3d 676, 680 (2015). To obtain relief under the PCRA, based upon a claim of ineffective assistance of counsel, a petitioner must establish by a preponderance of evidence that counsel's ineffectiveness "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S.A. § 9543(a)(2)(ii).

5

*Bruton v. United States*[1]

Williams alleges that trial counsel was ineffective in failing to object to Detective Harkins reading a redacted statement by the co-defendant, Mr. Abdul-Hakim. Hereafter is the complained of testimony:

> "On that night, I don't remember the day of the week, but there was a Phillies playoff game on. Me and two other guys were out just driving around. We were smoking in the car and went over under the bridge. That's I-95. We were there for awhile and then just drove around.
>
> None of us had any money in our pockets, and we saw three guys walking up Second Street. We figured we could rob them and get some money.
>
> I was like, let's get 'em. And we pulled the car up the block to get ahead of them, and me and another guy got out of the car. The driver of the car pulled over, and me and the other guy walked up the block towards Third Street. We were walking slow so the three guys could catch up to us."

(N.T. 11/22/2013, p.164). When the detective concluded his testimony regarding the statement of the co-defendant, the court, *sua sponte*, cautioned the jury:

> "Now ladies and gentlemen of the jury, I just want to give you a cautionary instruction. You've just heard the detective read a statement that is attributed to one of the defendants in this matter. That statement, the content of the statement, may only be used against the person who made the statement."

(N.T. 11/22/2013, p. 172. Furthermore, the court admonished the jurors in her charge:

> "You have also heard evidence that each defendant made a statement to the police. I instruct you that the contents of each state-ment can only be used against the maker of the statement. So the statement attributed to Defendant Williams can only be used against him, and the statement attributed to Defendant Abdul-Hakim can only be used against him."

---

[1] 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968)

6

(N.T. 11-25-2013, p. 55). Williams contends that these instructions were too little too late.

Bruton, supra, and its progeny stand for the proposition that a defendant is deprived of his rights under the Confrontation Clause when a non-testifying co-defendant's statement, naming the defendant as a participant in the crime, is introduced at trial, and that a cautionary instruction may not be sufficient to eradicate prejudice against the defendant. *Bruton v. United States, supra*; *Richardson v. Marsh*, 481 U.S. 200, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987); *Gray v. Maryland*, 523 U.S. 185, 118 S.Ct. 1151, 140 l.Ed.2d 294 (1998). This same line of cases establish that if a co-defendant's statement can be redacted to omit the defendant's name, without obviously revealing the omission, a jury instruction to consider the statement only against the co-defendant who made it, is presumptively sufficient to protect a defendant's constitutional right of confrontation. *Gray v. Maryland, supra; Commonwealth v. Travers*, 564 Pa. 362, 768 A.2d 845, 851 (2001). Substituting a neutral phrase such as "the other guy" for the defendant's name is an appropriate redaction, with a limiting instruction and is sufficient to protect the defendant's confrontational rights. *Commonwealth v. Miller*, 572 Pa. 623, 819 A.2d 504, 511-13 (2002); *Commonwealth v. Cannon*, 610 Pa. 494, 22 A.3d 210, 218 (2011); *Commonwealth v. Travers*, 564 Pa 362, 768 A.2d 845, 850-851 (2001); *Commonwealth v. James*, 66 A.3d 771, 777-78 (Pa.Super. 2013); *Commonwealth v. McGlone*, 716 A.2d 1280, 1285 (Pa.Super. 1998).

A review of the record clearly demonstrates that Abdul-Hakim's statement was properly redacted, comported with precedent and was fittingly admitted with cautionary instructions to the jury. The introduction of such evidence is squarely within the trial court's discretion and as the

7

court properly admitted the redacted statement, counsel cannot be faulted for not objecting. Likewise, appellate counsel cannot be denounced for failing to raise a meritless issue. *See Commonwealth v. Robinson*, 581 Pa. 154, 202, 864 A.2d 460, 488 (2004).

### Supplemental Jury Instruction

Williams next complains that the trial court's supplemental jury instruction was confusing, ambiguous and misleading, and that counsel was ineffective in failing to object to those instructions. The defendant asserts that the trial court, when asked to clarify the elements of third degree murder erred in its description of malice; failing to explain that the defendant was accused of merely acting as the getaway driver, and omitting the phrase "beyond a reasonable doubt".

When reviewing a challenge to a portion of the jury charge, the appellate court must review the jury charge as a whole to determine if it is fair and complete. A trial court has wide discretion in how it phrases its instructions, as long as it clearly, adequately and accurately presents the law to the jury. The court commits an abuse of discretion only when there is an inaccurate statement of the law. *Commonwealth v. Conaway*, 105 A.3d 755, 760-61 (Pa.Super. 2014); *Commonwealth v. Roser*, 914 A.2d 447, 455 (Pa.Super. 2006). The standard of review of a challenged jury instruction is well-settled:

> When reviewing jury instructions for reversible error, an appellate court must read and consider the charges as a whole. We will uphold an instruction if it adequately and accurately reflects the law and is sufficient to guide the jury through its deliberations. Error will not be predicated on isolated excerpts. Instead, it is the general effect of the charge that controls. An erroneous charge warrants the grant of a new trial unless the reviewing court is convinced beyond a reasonable doubt that the error is harmless.

8

*Commonwealth v. Ketterer*, 725 A.2d 801, 804-805 (Pa.Super. 1999) (citing *Commonwealth v. Nichols*, 692 A.2d 181, 186 (Pa.Super. 1997)).

A trial court is bound to charge a jury on the correct legal principles applicable to the facts presented at trial. *Commonwealth v. Cox*, 546 Pa. 515, 686 A.2d 1279 (1996). The trial court has broad discretion in how it phrases its instructions to a jury, so long as the law is clearly, adequately and accurately presented to the jury for its consideration. *Commonwealth v. Gibson*, 553 Pa. 648, 665, 720 A.2d 473, 481 (1998) (*citing Commonwealth v. Hawkins*, 549 Pa. 352, 701 A.2d 492 (1997), *cert. denied*, 523 U.S. 1083, 118 S.Ct. 1535, 140 L.Ed.2d 685 (1998)).

The trial court instructed the jury on third degree murder as follows:

> "Now the third type of murder that both defendants are facing is murder in the third degree. This is defined as any killing with malice that is not first or second-degree murder.
>
> To find either defendant guilty of this offense, you must find that the following three elements have been proven beyond a reasonable doubt:
>
> First, you must be satisfied that Anthony DeMarco is dead. Secondly, you must be satisfied that the unnamed co-conspirator and Dawud Abdul-Hakim and Kevin Williams killed him, and you must be satisfied beyond a reasonable doubt that the unnamed co-conspirator and Dawud Abdul-Hakim and Kevin Williams did so with malice.
>
> The word malice as I am using it has a specific meaning. As I have told you, it does not mean simply hatred, spite, or ill will. Malice is a shorthand way of referring to a particular mental state that the law regards as being bad enough to make a killing murder.
>
> For murder in the third degree, the killing is with malice if the perpetrator's actions show their wanton and willful disregard of an unjustified and extremely high-risk that his conduct would result in death or serious bodily injury to another.
>
> In this form of malice, the Commonwealth need not prove that the perpetrator specifically intended to kill another. The Commonwealth must prove, however, that the perpetrator took actions

9

while consciously – that is, knowingly – disregarding the most serious risk they were creating, and that by disregarding that risk, the perpetrators demonstrated their extreme indifference to the value of human life.

When deciding whether the unnamed co-conspirator and Abdul-Hakim and Williams acted with malice, you should consider all of the evidence regarding their words, conduct, and the attending circumstances that may show their state of mind."

(N.T. 11-25-2013, pp. 36-38).

When the jury asked to clarify the second element of the third degree murder charge, the court advised that each defendant had been charged with third degree murder and as such,

"Now again, this is a charge where you have to make a decision as to each defendant, a separate decision as to each defendant. All right. So it doesn't matter which defendant you take first, which one you consider first, but you have to make your decision as to each defendant.

So the elements are these: ... You have to be satisfied first that Mr. DeMarco is dead. You have to be satisfied that the unnamed co-conspirator and Mr. Abdul-Hakim killed Mr. DeMarco. And third, you have to be satisfied that the unnamed co-conspirator and Mr. Abdul-Hakim did so with malice. Once you've made that set of decisions, put that aside.

Then you go back, and you ask those same three questions as it relates to Mr. Kevin Williams.

...

So for murder in the third degree, there are three parts to it: You have to answer each of the three parts separately for each defendant. All right.

So this time, I'll give the example. Let's say you're considering Kevin Williams. You have to decide as to Kevin Williams, are you satisfied that Anthony DeMarco is dead?

Then you have to decide for Kevin Williams, are you satisfied that the unnamed co-conspirator and Mr. Williams killed him?

Then you have to satisfy – you have to be satisfied thirdly that Mr. Williams and co-conspirator did so with malice.

10

(N.T. 11-26-2013, pp. 8-10).

As to the assertion that Mr. Williams was merely the getaway driver, the court charged the jury as to accomplice liability as follows:

> The next section that I'm going to read is the instruction regarding accomplice liability. There is a way that one defendant can be proven liable for the conduct of another person or persons. That is where the defendant is an accomplice of a person who actually commits the crime at issue.
>
> To be an accomplice, a person does not have to agree to help someone else. A person is an accomplice if he on his own acts or helps the other person commit the crime. More specifically, you may find the defendant is an accomplice of another in this case if the following two elements are proven beyond a reasonable doubt.
>
> First, that the defendant had the intent of promoting and facilitating the commission of the offense of robbery; and second, that the defendant aided, agreed to aid, or attempted to aid the other person in committing it.
>
> Accomplice liability must be assessed separately for each of the crimes charged. If two or more crimes are committed and the defendant before you is being charged as an accomplice for each of these crimes, he may not be found guilty unless it is shown as to each individual crime that this defendant had the intent of promoting the specific crime and then aided, agreed to aid, or attempted to aid the other person in planning or committing it.
>
> In other words, you must decide whether the prosecution proved beyond a reasonable doubt that each defendant was an accomplice in the first crime, and then go on to make a determination as to whether – the second crime charged in this matter.
>
> It is important to understand that a person is not an accomplice merely because he is present when a crime is committed or knows a crime is being committed. To be an accomplice, a defendant must specifically intend to help bring about the crime by assisting another in its commission.
>
> A person who is an accomplice will not be responsible for a crime if and only if the person, before the other person commits the crime, either stops his own efforts to promote or facilitate the commission of the crime or – and either wholly deprives his previous

11

efforts of effectiveness in the commission of the crime or gives timely warning to law enforcement authorities or otherwise makes a proper effort to prevent the commission of the crime."

(N.T. 11-25-2013, pp. 47-49).

Obviously, when read in its entirety, the charge to this jury was clear, adequately and correctly reflected the law and was more than sufficient to guide the jurors through their deliberations. As such, counsel cannot be faulted for failing to object at trial, nor can appellate counsel be discredited for not raising the issue on appeal.

### Discretionary Aspects of Sentencing

Lastly, the defendant asserts that his sentence was excessive and unreasonable. An appeal of a sentence is only permitted when the reviewing court determines that there is a substantial question as to the appropriateness of the sentence. *Commonwealth v. Boyer,* 856 A.2d 149, 151-52 (Pa.Super. 2004). The court's determination of appealability is made on a case-by-case basis. When evaluating if a sentence is manifestly excessive, the appellate court gives great weight to the sentencing court's discretion, as that court is in the best position to measure factors such as the nature of the crime, the defendant's character, and the defendant's display of remorse, defiance, or indifference. *Commonwealth v. Ellis,* 700 A.2d 948, 958 (Pa.Super. 1997).

It is well-settled that "sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion." *Commonwealth v. Johnson,* 446 Pa.Super. 192, 197, 666 A.2d 690, 693 (1995) (quoting *Commonwealth v. Dotter,* 403 Pa.Super. 507, 516, 589 A.2d 726 (1991)). "To be a manifest abuse of discretion, a sentence must either exceed the statutory limits or be manifestly excessive. The discretion of a

12

trial judge must be accorded great weight because he is in the best position to weigh such factors as the nature of the crime, the defendant's character, and the defendant's displays of remorse, defiance, or indifference." *Commonwealth v. Minnott*, 395 Pa.Super. 552, 554, 577 A.2d 928, 929 (1990).

After reviewing the pre-sentence investigation reports, the trial court sentenced the defendant to twenty to forty years' incarceration for the offense of Third degree Murder, ten to twenty years consecutive for the robbery of Anthony DeMarco, Jr. with five to ten years concurrent for the second robbery, and five to ten years consecutive for criminal conspiracy; hence an aggregate sentence of thirty-five to seventy years' incarceration. The maximum the defendant could have received was sixty to one hundred and twenty years.

In determining whether a sentence is inappropriate, the appellate courts look to whether the sentence *prima facie* appears excessive, based on the criminal conduct that occurred in the case. *Commonwealth v. Dodge*, 77 A.3d 1263, 1269 (Pa.Super. 2013); *Commonwealth v. Gonzalez-Dejusus*, 994 A.2d 595, 599, (Pa.Super. 2010).

"Our Supreme Court has held that where a pre-sentence report exists, we shall 'presume that the sentencing judge was aware of the relevant information regarding the defendant's character and weighed those considerations along with the mitigating statutory factors.'" *Commonwealth v. McKiel*, 427 Pa.Super. 561, 565, 629 A.2d 1012, 1013-14 (1993) (quoting *Commonwealth v. Devers*, 519 Pa. 88, 101-102, 546 A.2d 12, 18 (1988)). "Having been fully informed by the presentence report, the sentencing court's discretion should not be disturbed." *Id.*

13

The presentence report noted that Williams had been under juvenile supervision up until approximately one month prior to this offense; that this defendant had refused to attend drug treatment or meet with his social worker; that he had refused to attend school; he quit an apprenticeship program after one month; had been selling drugs since he was seventeen; expressed no remorse; did poorly under juvenile supervision and was uncooperative with his probation officer. The trial court reviewed the pre-sentence reports on the defendant, along with all of the evidence presented before sentencing the defendant.

Williams produced no evidence that the sentence imposed was either inconsistent with a specific provision of the sentencing code or contrary to the fundamental norms which underlie the sentencing process and as such, there is no substantial question. *Commonwealth v. Sierra*, 752 A.2d 910, 912 (Pa.Super. 2000). Moreover, it is important to note that the defendant does not mention that the sentence imposed was within the sentencing guidelines[2] as well as in compliance with the Sentencing Code[3]. As such, neither trial counsel nor appellate counsel can be faulted for failing to raise these issues.

Accordingly, the court acted within its discretion in dismissing the PCRA petition and should be affirmed.

BY THE COURT:

DATE: <u>February 22, 2018</u>

J. SCOTT O'KEEFE, J.

---

[2] 204 Pa. Code §303.1 *et seq.*
[3] 42 Pa.C.S. §§ 9701-9781.

14

## IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
## FIRST JUDICIAL DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | CRIMINAL TRIAL DIVISION |
| | : | |
| | : | |
| v. | : | 355 EDA 2018 |
| | : | |
| | : | |
| KEVIN WILLIAMS | : | CP-51-CR-0002781-2011 |

### Proof of Service

I hereby certify that I am on this day serving the foregoing Court's Opinion upon the person(s), and in the manner indicated below, which service satisfies the requirements of Pa.R.Crim.P. 114:

Defense Attorney:      Burton Rose, Esquire
1731 Spring Garden Street
Philadelphia, PA 19130-3893

Type of Service:      ( ) Personal **(X)** First Class Mail ( ) Interoffice ( ) Other, please specify

District Attorney:      Appeals Unit
District Attorney's Office
3 South Penn Square
Philadelphia, PA 19107

Type of Service:      ( ) Personal ( ) First Class Mail **(X)** Interoffice ( ) Other, please specify

Date:   February 22, 2018

Allison M. O'Keefe, Law Clerk

15